Filed 1/28/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re MARK C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARK C.,<br><br>        Defendant and Appellant. | A144875<br><br>(Alameda County<br>Super. Ct. No. SJ150242341) |

Defendant Mark C. was the subject of a wardship petition filed by the district attorney pursuant to Welfare and Institutions Code section 602, subdivision (a),[1] alleging that he possessed a knife with a blade longer than two and one-half inches on school grounds, in violation of Penal Code section 626.10.

Mark requested informal supervision under section 654.2, although his offense made him presumptively ineligible under section 654.3. The juvenile court denied Mark's request after a hearing.

At a subsequent hearing, Mark admitted the allegations in the petition and the juvenile court imposed conditions of probation, including a requirement that he submit to warrantless searches of his "electronics including passwords" (electronics search condition).

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

On appeal, Mark raises three issues: the juvenile court erred in not placing him under informal supervision; the juvenile court erred in imposing the electronics search condition; and several of the other probation conditions imposed by the juvenile court, including conditions that prohibit him from possessing weapons and narcotics, are unconstitutionally vague and overbroad and "lack proof of scienter," and must therefore be modified.

We conclude that the juvenile court abused its discretion in imposing the electronics search condition, and we modify the probation condition to strike the language at issue. In all other respects, we affirm the juvenile court's dispositional order.

### FACTUAL AND PROCEDURAL BACKGROUND

We draw our brief statement of the facts from reports prepared by the police and the Alameda County Probation Department. On the afternoon of November 17, 2014, defendant Mark C., then 14 years old, was being escorted to the office of his high school's assistant principal in connection with a fight that had taken place during the lunch period. When a campus supervisor reported that she saw a suspicious bulge near Mark's waistband, a police officer pat searched him and retrieved a folding pocket knife with a blade two and three-fourths inches long. A search of Mark's backpack revealed a canister of pepper spray, which is considered contraband at the school. Mark told the police that he carried the items for self defense, and that some people disliked and provoked him.

Mark was arrested, and in February 2015 the district attorney filed a wardship petition pursuant to section 602, subdivision (a), alleging that Mark possessed a knife with a blade longer than two and one-half inches on school grounds, in violation of Penal Code section 626.10.

At Mark's request, the matter was referred to the probation department for consideration of informal supervision pursuant to section 654.2. At a hearing in March, the juvenile court received the probation department's report, which concluded that Mark was suitable for informal supervision, even though his alleged violation of Penal Code section 626.10 made him presumptively ineligible under section 654.3. Mark argued that

2

informal supervision was appropriate because he had "the benefit of a stable family home, with both his mother and stepfather being very supporting of him and fully willing to cooperate with probation services"; and because there had already been intervention and he had "made a turnaround." Mark also argued that he was doing better in school, although his grades from the most recent semester were poor. The juvenile court found that the case was not suitable for informal supervision, stating that "bringing a knife and pepper spray to school is a very, very serious offense or are serious offenses. . . . [W]e're going to need a standard probation for the situation, . . . not a 654.2 given the seriousness of the weapons he brought to school."

At a subsequent hearing in April, Mark admitted the allegations in the petition and was adjudged a ward of the juvenile court. The juvenile court committed Mark to the care, custody and control of the probation department, ordered him to live with his mother, and imposed terms of probation,[2] including the electronics search condition. The terms also include other conditions, several of which Mark contests: a weapons condition, stating that defendant cannot "possess, own, or handle any firearm, knife, weapon, fireworks, explosives or chemicals that can produce explosives, including matches and lighters . . . [p]epper spray or any other deadly or dangerous weapon"; a drug condition, stating that defendant cannot "use or possess narcotics, drugs, other controlled substances, related paraphernalia or poisons unless prescribed by a physician"; a school presence condition, limiting defendant's presence on the campus or grounds of any school; a curfew, requiring defendant to "[m]aintain curfew set by parent/guardian"; an association condition, prohibiting defendant from associating with "anyone you know to use, deal or possess illegal drugs"; an obedience condition, requiring defendant to "[o]bey

---

[2] The juvenile court pronounced the probation conditions at the April hearing, and subsequently listed them in a signed minute order. The wording of the minute order varies slightly from that of the reporter's transcript. The parties' briefs focus on the conditions as stated in the minute order, except with respect to the weapons condition, and we follow suit.

3

parent(s) or guardian(s)"; and an alcohol condition, stating that defendant cannot "use or possess alcoholic beverages."

Mark objected to the search condition at the time it was imposed, but did not object to the other conditions. This appeal timely followed.

## DISCUSSION

We first address Mark's challenge to the juvenile court's denial of his request for informal supervision, and then turn to his challenges to the probation conditions.

A. *The Juvenile Court's Denial of Mark's Request for Informal Supervision*

1. *Applicable Law*

Section 654.2, subdivision (a), provides that "[i]f a petition has been filed by the prosecuting attorney to declare a minor a ward of the court under Section 602, the court may, without adjudging the minor a ward of the court and with the consent of the minor and the minor's parents or guardian, continue any hearing on a petition for six months and order the minor to participate in a program of supervision as set forth in Section 654." Such a program of supervision is commonly known as "informal probation" or "informal supervision." The statutory scheme specifically excludes from eligibility a minor who is alleged to have violated section 626.10 of the Penal Code, as Mark was alleged to have done, "except in an unusual case where the interests of justice would best be served and the court specifies on the record the reasons for its decision." (§ 654.3, subd. (c).) The juvenile court must make its own determination of a minor's suitability for informal supervision, independent of the probation officer, and must consider all relevant evidence in making that determination. (*In re Armondo A.* (1992) 3 Cal.App.4th 1185, 1189-1191 (*Armondo A.*).)

We review the juvenile court's order denying informal supervision for abuse of discretion. (*Armondo A.*, *supra*, 3 Cal.App.4th at pp. 1189-1190.) We reverse only if the juvenile court "has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination." (*In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 881.) We do not "reweigh the evidence or substitute our judgment for that of the juvenile court." (*Ibid.*)

4

## 2. *Analysis*

Because Mark was alleged to have violated Penal Code section 626.10, he is "presumptively ineligible" for informal supervision under section 654.3. (See *Kody P. v. Superior Court* (2006) 137 Cal.App.4th 1030, 1033, fn. 2.) The presumption is overcome only in an "unusual case where the interests of justice would be best served and the court specifies on the record the reasons for its decision." (§ 654.3, subd. (c).)

Mark, however, does not attempt to characterize his case as unusual in any respect, but rather contends that the trial court erred in denying informal supervision for other reasons: there was no reason to doubt his claim that the items were carried for self-defense; the informal supervision program is sufficient to monitor his behavior and allow the standard probation conditions to be applied; he had already begun improving his behavior at home and performance at school; it was "unreasonable" to "brand" him "as a delinquent" for his first contact with the juvenile justice system; and a criminal record could harm him "in the longer term." Mark cites no evidence or authority to support a finding that his case is unusual on any of those grounds, and he points to nothing in the record that suggests the juvenile court abused its discretion in reaching its conclusion.

The record reflects that the juvenile court read and considered the probation department's report, and heard and considered arguments of counsel. (See *Armondo A.*, *supra*, 3 Cal.App.4th at p. 1191 ["[d]ue process . . . requires the juvenile court to consider all relevant evidence in exercising its discretion"].) Because the juvenile court did not adopt the probation department's recommendation, it is clear that the juvenile court made its own independent determination of Mark's suitability for informal supervision independent of the probation department, as the law requires. (*Id.* at p. 1190.) Although the probation department recommended informal supervision, the juvenile court disagreed with its conclusion, and explained why: "bringing a knife and pepper spray to school is a very, very serious offense." The juvenile court heard and understood the argument that Mark was making progress and told Mark, "[I]t sounds like it's been a pretty dramatic turnaround for you. Keep up the good work. All that will be taken into consideration if you're placed on probation, sir. But at this point, . . . I'm not going to

5

grant you this informal probation, but I don't want you to get discouraged because you're doing well at school, because all that is going to be considered, sir, and doing well at home as well."[3]  The juvenile court granted Mark's counsel's request to put the matter over for further pretrial to get more information about Mark's progress, but was firm in denying informal supervision: "the circumstances at the time of the commission of the offense, those won't change, and that's . . . primarily the situation that causes me to deny 654.2."

Noting a lack of published authority on what constitutes an abuse of discretion in denying informal supervision, Mark urges us to look to the law that governs the denial of deferred entry of judgment, pursuant to section 790.  A juvenile court can deny deferred entry of judgment to an eligible minor who wants to participate "only when the trial court finds ' "the minor would not benefit from education, treatment and rehabilitation." ' " (*In re Joshua S.* (2011) 192 Cal.App.4th 670, 676.)  From that, Mark argues, "If it can be an abuse of discretion to deny [deferred entry of judgment] to [a statutorily] eligible minor charged with a felony offense, then it is even more likely an abuse of discretion to deny informal supervision to an eligible minor charged with a misdemeanor."

The analogy is inapt.  We recognize that deferred entry of judgment, like informal supervision, is an alternative rehabilitative option that is available to the juvenile court. (*In re C.Z.* (2013) 221 Cal.App.4th 1497, 1502.)  But even if we agreed that case law on the denial of deferred entry of judgment would be persuasive here, Mark's argument fails, because it likens his case to one in which an eligible minor is denied deferred entry of judgment, and his offense makes him *ineligible* for informal supervision except in an "unusual" case.  (§ 654.3, subd. (c).)

---

[3] The probation report submitted to the juvenile court indicated that Mark had a record of disciplinary issues at school, had been arrested for vehicle theft earlier in the year and was currently participating in a restorative justice program, and had been cited for stealing a sports jersey at the mall the day before he was arrested for bringing a weapon to school.

We conclude that the juvenile court did not abuse its discretion in denying Mark's request for informal supervision under section 654.2.

B.      *Probation Conditions Imposed by the Juvenile Court*

        1.      *Electronics Search Condition*

        When the juvenile court imposed a search condition that covered "electronics including passwords," Mark's counsel objected.[4]  The juvenile court responded, "Apparently, he's been using [marijuana] on a regular basis since 14.  He's now 15.3.  He uses three times a month.[5]  In order for the court to properly supervise his drug supervision condition, I find minors on a regular basis will buy or sell drugs using the Internet and post photos and texts of themselves and information about their use of drugs and possession of paraphernalia.  It's absolutely necessary . . . from the Court's experiences."

        Mark contends that the electronics search condition is invalid under *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*), that it is unconstitutionally overbroad, and that it poses a risk of illegal eavesdropping under the Invasion of Privacy Act, Penal Code section 630 et seq.

        a.      *Applicable Law*

        Section 730, subdivision (b) authorizes the juvenile court to "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."

        We review the juvenile court's probation conditions for abuse of discretion.  (*In re P.A.* (2012) 211 Cal.App.4th 23, 33.)  The legal principles that govern our review are set

---

[4] Mark objected to all the search conditions at the time of imposition, but on appeal he challenges only the electronics search condition.  The search condition states in its entirety:  "Submit person and any vehicle, room or property, electronics including passwords under your control to search by Probation Officer or peace office[r] with or without a search warrant at any time of day or night."

[5] Mark points out, and the Attorney General concedes, that the juvenile court apparently misspoke.  The probation department's report states, "Mark first experimented with marijuana at age 14 and stated he rarely used it; two times a month."

forth in *In re Victor L.* (2010) 182 Cal.App.4th 902 (*Victor L.*): "The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults. '[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults." ' [Citation.] This is because juveniles are deemed to be 'more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed.' [Citation.] Thus, ' "a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court." ' [Citations.]" (*Id.* at p. 910.)

"[W]hile the juvenile court may impose a wider range of probation conditions [than are permitted for adults], those conditions are permissible only if ' " 'tailored specifically to meet the needs of the juvenile.' " ' " (*In re D.G.* (2010) 187 Cal.App.4th 47, 53 (*D.G.*).) This restriction has particular application to search conditions imposed on juveniles. For adults, probation is a privilege and adults may waive their Fourth Amendment rights by consenting to warrantless searches " 'in exchange for the opportunity to avoid service of a state prison term.' [Citation.]" (*People v. Balestra* (1999) 76 Cal.App.4th 57, 65 (*Balestra*), quoting *In re York* (1995) 9 Cal.4th 1133, 1150.) For juveniles, however, probation " ' "is an ingredient of a final order for the minor's reformation and rehabilitation." ' (*In re Tyrell J.* (1994) 8 Cal.4th 68, 81, overruled on another ground in *In re Jaime P.* (2006) 40 Cal.4th 128.) A juvenile 'cannot refuse probation [citations] and therefore is in no position to refuse a particular condition of probation.' (*In re Binh L.* (1992) 5 Cal.App.4th 194, 202 (*Binh*).) Courts have recognized that a 'minor cannot be made subject to an automatic search condition; instead, such condition must be tailored to fit the circumstances of the case and the minor.' (See *People v. Rios* (2011) 193 Cal.App.4th 584, 597; see also *Binh*, *supra*, 5 Cal App.4th at p. 203.)" (*In re Erica R.* (2015) 240 Cal.App.4th 907, 914 (*Erica R.*).)

As we explained in *Erica R.*, the juvenile court's discretion in imposing conditions of probation is broad but not unlimited. (*Erica R.*, *supra*, 240 Cal.App.4th 907.) Our Supreme Court has stated criteria for assessing the validity of a condition of probation:

8

upon review, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality[.]' " (*Lent*, *supra*, 15 Cal.3d at p. 486.) "Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Ibid.*) Adult and juvenile probation conditions are judged by the *Lent* standard. (*D.G.*, *supra*, 187 Cal.App.4th at p. 52.)

        b.    *Analysis*

The *Lent* "test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) We therefore consider the electronics search condition with respect to each prong in turn. Does the condition relate to the criminal offense at issue? Does the condition relate to conduct that is itself criminal? Is the condition reasonably related to preventing future criminality? (*Id.* at p. 380.) If the answer to any of these questions is "yes," the condition is valid under *Lent*; if the answer to all of them is "no," it is invalid. As we discuss below, the answer to all the questions here is "no."

We first address the relationship between the electronics search condition and Mark's offense. Mark argues that the condition has no connection to his underlying offense, possession of a knife on school grounds. The Attorney General argues that the condition is related to the underlying offense, noting that Mark has asserted a "need for self-defense and his belief that people are looking for him and provoke him." The Attorney General contends that the electronics search condition "allows officers to monitor his associations and his possession of deadly or dangerous weapons."

The Attorney General cites *People v. Ebertowski* (2014) 228 Cal.App.4th 1170, 1177, in support of that argument, but *Ebertowski* is distinguishable. In *Ebertowski*, the Court of Appeal upheld an electronics search condition as related to the defendant's crimes where the defendant was convicted of gang-related offenses (*id.* at pp. 1176-1177), and there was evidence that defendant had used social media sites to promote his

9

gang. (*Id.* at p. 1173.) Here, however, there was no evidence that Mark had used electronic devices in connection with the underlying offense, or indeed in connection with any other illegal activity. (See *In re J.B.* (2015) 242 Cal.App.4th 749, 756 (*J.B.*), distinguishing *Ebertowski* on similar grounds.)

Because there is no evidence that Mark used electronic devices or social media to facilitate his offense, and no evidence of any connection between Mark's use of electronic devices and any illegal activity, we find no relationship between the electronics search condition and the underlying offense of possessing a prohibited knife on school grounds.[6]

The second inquiry under *Lent* is quickly addressed. The electronics search condition relates to Mark's use of electronic devices; using such devices is not in itself criminal, nor is using password-protected services such as social media.

With the first two questions answered "no," the first two prongs of the *Lent* test are satisfied, and we must therefore consider whether the electronics search condition as imposed on Mark is reasonably related to future criminality. (*Lent*, *supra*, 15 Cal.3d at p. 486.)

Mark argues that the condition is not reasonably related to future criminal activity, noting that the condition does not rest on any evidence concerning Mark or minors in

---

[6] In this respect, Mark's case differs from *In re Malik J.* (2015) 240 Cal.App.4th 896 (*Malik*), where the minor had stolen a cell phone. (*Id.* at p. 900; see *J.B.*, *supra*, 242 Cal.App.4th at p. 756 [distinguishing *Malik* from *J.B.*].) In *Malik*, the People contended an electronics search condition was justified on account of the minor's history of robbing people of their cell phones, and so that if the minor " 'were found in possession of a cell phone, a probation or police officer could check the phone to determine whether it had been stolen.' " (*Malik*, *supra*, 240 Cal.App.4th at p. 902.) Even so, the Court of Appeal held that the electronics search condition as imposed by the juvenile court was overbroad because it "[went] considerably farther than permitting police to search a cell phone to determine whether Malik is the owner. It also require[d] him to turn over his passwords to, and authorize[d] unfettered search of, all of his electronic devices and all of his social media accounts." (*Ibid.*) Accordingly, the Court of Appeal in *Malik* modified the electronics search condition; among other things, it struck the requirement that he " 'provide any passwords to any social media sites.' " (*Id.* at pp. 900, 906.)

general, but rather rests entirely on the juvenile court's assertion that it has found "minors on a regular basis will buy or sell drugs using the Internet and post photos and texts of themselves and information about their use of drugs and possession of paraphernalia." The Attorney General counters that the condition reasonably relates to future criminality because "[i]t aids in deterring further offenses and in monitoring compliance with the other terms of probation, including the drug condition as the court stated." For this argument, the Attorney General relies on *Balestra* and *Olguin*, but the cases are distinguishable.

In *Balestra*, the defendant pleaded guilty to a count of elder abuse and then challenged the condition of her probation that required her to submit to warrantless searches. (*Balestra*, *supra*, 76 Cal.App.4th at pp. 62, 66-68.) The Court of Appeal upheld the search condition, explaining that "a warrantless search condition is intended to ensure that the subject thereof is obeying the fundamental condition of all grants of probation, that is, the usual requirement . . . that a probationer 'obey all laws.' Thus, warrantless search conditions serve a valid rehabilitative purpose." (*Id.* at p. 67.) The court also noted that the information obtained through such searches can measure the effectiveness of the probationer's supervision. (*Ibid.,* citing *People v. Reyes* (1998) 19 Cal.4th 743, 752.) At issue in Mark's case, however, is not the warrantless nature of the searches. Mark does not challenge warrantless searches of his person, vehicle, room, or property. He challenges the scope of the search condition, which extends to all password-protected uses of his electronic devices.

In *Olguin*, our Supreme Court upheld a probation condition that required the probationer to keep his probation officer informed of the presence of any pets at his place of residence. (*Olguin*, *supra*, 45 Cal.4th at p. 387.) The court's primary concern was with the safety of the probation officer during unscheduled visits to the probationer's residence. The court noted that "[p]robation officer safety during these visits and searches is essential to the effective supervision of the probationer" (*id.* at p. 381); that "[a]nimals can be unpredictable and potentially dangerous when faced with a stranger in their territory" (*ibid.*); and that once the probation officer had information about a pet, he

or she might "be accompanied by animal control officers during any search" (*id.* at p. 383), or "request that defendant detain or relocate a pet during a search." (*Ibid.*) The pet notification condition was held to be "a simple task [that] imposes no undue hardship or burden, and . . . clearly falls within the bounds of reason." (*Id.* at p. 382.) The condition was "reasonably related to the supervision of the defendant and hence to his rehabilitation and potential future criminality." (*Id.* at p. 380.) "[I]t is reasonable to permit the probation officer . . . to make the initial determination whether, in the officer's view, possession of a particular pet will have an impact on, or interfere with, probation supervision." (*Id.* at p. 386.)

The probation condition in *Olguin* did not extend the scope of the warrantless search of the probationer's residence, rather it facilitated the search of the residence by mitigating the potential of any pet residing with the probationer "to distract, impede, and endanger probation officers in the exercise of their supervisory duties." (*Olguin*, *supra*, 45 Cal.4th at p. 378.) Thus, it enabled the "probation officer to supervise his or her charges effectively." (*Id.* at pp. 380-381.)

The juvenile court here stated that the purpose of the electronics search condition was to supervise Mark's compliance with prohibitions against buying, selling, and using illegal drugs. The Attorney General contends that access to Mark's electronics and password-protected information would make it easier for the probation officer to determine whether Mark is complying with other terms of his probation as well.

We do not read *Olguin* to hold that *every* condition that might enable a probation officer to supervise his or her minor charges more effectively is necessarily "reasonably related to future criminality." (*Olguin*, *supra*, 45 Cal.4th at p. 381.) Such a reading would effectively eliminate the reasonableness requirement that the court in *Olguin* discusses at some length. (*Id.* at p. 382.) Requiring Mark to copy his probation officer on all his emails, and forward all his postings on social media to his probation officer might also facilitate his probation officer's supervision of him, as would requiring him to wear a body camera. But *Olguin* no more justifies these hypothetical probation conditions than the actual electronics search condition in this case.

12

In a recent case, Division Three of this court reached the same conclusion with regard to *Olguin*. In *J.B.*, a minor admitted an allegation of petty theft, and the juvenile court imposed an electronics search condition under a justification similar to the one at issue here. (*J.B.*, *supra*, 242 Cal.App.4th at p. 752 [quoting the juvenile court, " 'I find that individuals who are involved in drugs such as this individual tend to record their usage on the Internet, including photos of themselves smoking, in possession of such drugs, so that's appropriate. It's a very necessary condition to be supervised' "].) There was "no showing of any connection between the minor's use of electronic devices and his past or potential future criminal activity" (*id.* at p. 756) and, accordingly, even in view of J.B.'s prior use of marijuana, there was not adequate justification under *Lent* to require warrantless searches of electronic devices. (*Id.* at p. 758.) The court in *J.B.* pointed out that in *Olguin,* the court "had no occasion to consider the reasonableness of requiring a probationary minor to submit all of his electronic devices to inspection without any evidence or indication that the minor was likely to use the devices for unlawful or other proscribed activity."[7] (*Id.* at p. 757.)

_____

[7] We are aware that courts in other divisions have taken a different view of *Olguin* and *Lent*, but we respectfully disagree. Our colleagues in Division One and Division Five have upheld as valid under *Lent* electronics search conditions similar to the one at issue here, and imposed on defendants by the same juvenile court. (*In re Alejandro R.* (2015) 243 Cal.App.4th 556, 657-660 (*Alejandro R.*) [Division One]; *In re Patrick F.* (2015) 242 Cal.App.4th 104, 111 (*Patrick F.*) [Division Five]; *In re Ricardo P.* (2015) 241 Cal.App.4th 676, 686-687 (*Ricardo P.*) [Division One].) We recognize that these cases are not strictly comparable to the case here. For one thing, each case involves different facts. Alejandro R. admitted being an accessory after the fact to the transportation and distribution of marijuana and "was found to be in possession of illegal drugs and a member of a drug sales operation." (*Alejandro R.*, *supra*, 243 Cal.App.4th at pp. 654, 660.) Patrick F. admitted burglary; he told the probation officer that he stole to get money to buy marijuana, smoked marijuana up to three times a day, had not attended school regularly for a long time, and recognized that his marijuana use had influenced his decision not to attend school. (*Patrick F.*, *supra*, 242 Cal.App.4th at p. 108.) Ricardo P. admitted two felony counts of burglary; he said that he wasn't thinking clearly when he committed his offenses, and that he stopped smoking marijuana after he was arrested because it didn't allow him to think clearly. (*Ricardo P.*, *supra*, 241 Cal.App.4th at pp. 680-681.) Moreover, in each of these three cases, although the Court of Appeal upheld

13

Moreover, both *Olguin* and *Balestra* involved adult probationers. Both opinions stated explicitly that probation is a privilege, not a right (*Olguin, supra*, 45 Cal.4th at p. 384; *Balestra, supra,* 76 Cal.App.4th at p. 65.) But the situation for a minor is different. Adults, but not minors, have the right to refuse probation. Accordingly, search conditions that apply to a minor must be tailored to fit the minor's particular rehabilitative needs; if they are not, they are invalid under *Lent*. (*Erica R., supra*, 240 Cal.App.4th at p. 914.)

In *Erica R.*, the underlying offense was misdemeanor possession of ecstasy, which was found in a purse that the minor left behind in a school counselor's office; nothing in the record connected the minor's use of electronic devices or social media to illegal drugs. (*Erica R., supra*, 240 Cal.App.4th at p. 909-910, 913.)[8] In *J.B.*, the underlying offense was petty theft, the minor had admitted to using marijuana for at least two and a half years, and the only information in the record about the use of electronic devices was that the minor was playing with his cell phone during an interview with his mother and the probation officer, despite his mother telling him to put the phone away. (*J.B., supra*, 242 Cal.App.4th at p. 753.) In both cases, an electronics search condition was held to be not reasonably related to future criminality.

Similarly, the record here does not support a conclusion that the electronics search condition is reasonably related to future criminal activity by Mark. There is nothing in the record about Mark's offense or his social history that connects Mark's use of electronics to illegal drugs. With respect to electronics and drugs, the record shows only

---

an electronics search condition under *Lent*, the condition was held to be unconstitutionally overbroad, and the court struck the condition (*Ricardo P., supra*, 241 Cal.App.4th at p. 692) or modified it (*Alejandro R., supra*, 243 Cal.App.4th at p. 661; *Patrick F., supra*, 242 Cal.App.4th at p. 115.)

[8] The same juvenile court heard *Erica R.*, *J.B.* and this case, and justified the electronics search conditions using almost identical language in each case. In *Erica R.*, "[t]he juvenile court justified the electronic search condition solely by reference to its experience that 'many juveniles, many minors, who are involved in drugs tend to post information about themselves and drug usage.' " (*Erica R., supra*, 240 Cal.App.4th at p. 913.)

that over the course of four months Mark was disciplined at school five times for using a cell phone in class and that Mark admitted to using marijuana twice a month. Because nothing in Mark's offense or personal history shows a connection between his use of electronic devices or social media and any criminal activity, there is no reason to believe that the electronics search condition will serve the rehabilitative function of preventing Mark from committing future criminal acts. (*Erica R.*, *supra*, 240 Cal.App.4th at p. 913, citing *D.G.*, *supra*, 187 Cal.App.4th at p. 53.)

Accordingly, we conclude that the electronics search condition here is invalid under *Lent*, and therefore we will strike the language "electronics including passwords" from the search condition imposed by the juvenile court. Because we hold that the condition is invalid under *Lent*, we do not reach Mark's constitutional and statutory arguments.

2.      *Objections to Other Probation Conditions*

Mark contends that the conditions imposed by the juvenile court that concern weapons possession, the possession or use of drugs, presence on school grounds, maintaining a curfew, association with possessors or users of drugs, obedience to his parents and the possession or use of alcoholic beverages are unconstitutionally vague and overbroad, in part because they fail to require "scienter." If a vague or overbroad probation condition can be modified "without reference to the particular sentencing record developed in the trial court" (*In re Sheena K.* (2007) 40 Cal.4th 875, 887 (*Sheena K.*)), an issue of law arises that is subject to de novo review on appeal. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

Mark did not object to any of these probation conditions at the time the juvenile court imposed them. Though his arguments are made for the first time on appeal, we address the merits because the arguments "present pure questions of law based solely on facial constitutional grounds and do not require a review of the sentencing record, and are easily remediable on appeal." (*Victor L.*, *supra*, 182 Cal.App.4th at p. 907; see *Sheena K.*, *supra*, 40 Cal.4th at p. 888.)

15

*a.     Applicable Law*

*Sheena K.* sets forth the fundamental legal principles that we apply here:  "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  Furthermore, "[a] probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness.  [Citation.]" (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

"The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)  To survive a challenge for vagueness, a probation condition that prohibits certain conduct must provide the probationer with adequate notice of what is prohibited.  (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  To determine whether notice is adequate, a court is "guided by the principles that 'abstract legal commands must be applied in a specific context,' and that, although not admitting of 'mathematical certainty,' the language used must have ' "reasonable specificity." ' " (*Ibid.*, quoting *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116-1117.)  This means that if a category is essentially clear, so that people of common intelligence know whether something falls within it, there is no need for the condition to include a specific requirement that the probationer knows that something falls within the category.

A condition that is unconstitutionally overbroad or vague may sometimes be saved by modifying it.  (*Sheena K.*, *supra*, 40 Cal.4th at p. 892 [approving the Court of Appeal's modification to cure a vague probation condition]; *People v. Forrest* (2015) 237 Cal.App.4th 1074, 1083-1085 [modifying a probation condition to cure overbreadth].)  In particular, a condition that is unconstitutionally vague may sometimes be saved by modifying it to "impose an explicit knowledge requirement." (*Sheena K.*, *supra*, at p.

16

892.) Thus, an unconstitutionally vague condition that prohibits association with gang members may be cured by modifying it to prohibit association with anyone the defendant knows to be a gang member. (*Id.* at pp. 890-892.)

Our colleagues in Division One have examined the distinction between knowing what you are supposed to avoid, which is pertinent to vagueness, and the mens rea of willfulness, which is required for a probation violation. (*People v. Gaines* (2015) 242 Cal.App.4th 1035, 1039 (*Gaines*).) "[P]robation may not be revoked unless the evidence shows that a probationer's conduct constituted a willful violation of the terms of his or her probation. [Citation.] Thus, sentencing courts need not include a requirement that a probationer knowingly violated a condition in order to protect against enforcement of unwitting violations." (*Ibid.*)

We turn now to the conditions that Mark challenges here.

### b. *Analysis*

#### i. *Weapons Possession*

The juvenile court imposed the following weapons condition: "You are not to possess, own, or handle any firearm, knife, weapon, fireworks, explosives or chemicals that can produce explosives, including matches and lighters . . . [p]epper spray or any other deadly or dangerous weapon."

Mark contends that the condition does not adequately describe the terms "weapon" and "any other deadly or dangerous weapon"; that as written the condition would prohibit Mark from using normal household items, such as kitchen knives or ammonia (because it can be used to produce explosives); and that the provision lacks any requirement of knowledge or intent, with the result that Mark would violate his probation if he inadvertently carried a bag containing a cigarette lighter for his mother. Mark's proposal to remedy the condition's deficiencies reveals the extent to which questions of knowledge and mens rea underlie his objections: "You are not to *knowingly* possess any object that you *know* is a dangerous, illegal or deadly weapon. You are not to *knowingly* possess any other object that you *know* can be used to cause bodily injury or death, including but not limited to firearms, knives, fireworks, explosives, chemicals that can produce explosives,

17

pepper spray, matches or lighters, where you *intend* to cause such harm." (Emphasis added.)

Mark argues that his modification is aligned with the approach taken by our colleagues in Division Four in *In re Kevin F.* (2015) 239 Cal.App.4th 351 (*Kevin F.*). In *Kevin F.*, the court reviewed a probation condition that prohibited the possession of weapons[9] and modified it to include knowledge and mens rea requirements, with the resulting condition: " '[You shall] [n]ot knowingly possess weapons of any kind, which means no guns, knives, clubs, brass knuckles, attack dogs, ammunition, or something that looks like a weapon. In addition, you are not to knowingly possess anything that you intend to use as a weapon or that you know someone else might consider to be a weapon.' " (*Id.* at p. 366.)

The Attorney General argues that the weapons condition imposed by the juvenile court here is not unconstitutionally vague or overbroad because the specification of "any other deadly or dangerous weapon"—language that was not included in the *Kevin F.* condition—provides notice that Mark "must not possess any inherently dangerous item that is designed for use as a weapon, or any item being used in a way that renders it capable of inflicting great bodily injury or death." She cites *In re R.P.* (2009) 176 Cal.App.4th 562, 567-568 (*R.P.*), which rejected a vagueness challenge and upheld a probation condition that prohibited a minor from possessing any " 'dangerous or deadly weapon.' " In *R.P.*, the court concluded that by using the phrase "dangerous or deadly weapon" the condition plainly "prohibited possession of items designed as weapons, and other items not specifically designed as weapons that the probationer intended to use to inflict, or threaten to inflict, great bodily injury or death." (*People v. Moore* (2012) 211 Cal.App.4th 1179, 1186, citing *R.P.*, *supra*, at p. 570.)

---

[9] The original condition in *Kevin F.* was, " '[You are not to] possess weapons of any kind, which means no guns, knives, clubs, brass knuckles, attack dogs, ammunition, or something that looks like a weapon. You are not to possess anything that you could use as a weapon or someone else might consider to be a weapon.' " (*Kevin F., supra,* 239 Cal.App.4th at p. 357.)

The Attorney General also argues that because the category here provides adequate notice, there is no need for us to insert an express mens rea requirement.

We note that the weapons condition as stated by the juvenile court here includes the phrase "deadly or dangerous weapon," logically equivalent to the phrase " 'dangerous or deadly weapon' " discussed in *R.P.* (*R.P.*, *supra*, 176 Cal.App.4th at pp. 567-568.) We therefore conclude that the weapons condition is not vague or overbroad in that respect: it prohibits Mark from possessing, owning or handling any item specifically designed as a weapon, and any item not specifically designed as a weapon if he intends to use the item to inflict or threaten death or great bodily injury. (*Id.* at p. 570.) We also conclude that the absence of an express knowledge requirement here does not eliminate the mens rea of willfulness that is necessary for any violation of the weapons condition. Thus, we agree with our colleagues in *Gaines* that concerns about the application of the mens rea standard in revocation proceedings should not be "addressed by adding an express mens rea requirement to every single probation condition issued by our trial courts."[10] (*Gaines*, *supra*, 242 Cal.App.4th at p. 1040.)

Accordingly, we decline to modify the weapons condition imposed by the juvenile court.

### ii. *Possession or Use of Drugs*

The juvenile court imposed a drug condition, which requires that Mark not "use or possess narcotics, drugs, other controlled substances, related paraphernalia or poisons unless prescribed by a physician." The term "controlled substances" is defined by statute. (See Health & Saf. Code, §§ 11053-11058.)

---

[10] Our Supreme Court is currently considering two cases that raise the question whether certain probation conditions must state explicit knowledge requirements. One case concerns knowledge requirements in probation conditions that prohibit the possession of firearms and illegal drugs. (*People v. Hall*, review granted Sept. 9, 2015, S227193.) In the other, the Supreme Court has instructed the parties to brief the issue of whether no-contact probation conditions must be modified to include a knowledge requirement. (*In re A.S.*, review granted Oct. 1, 2014, S220280).

19

Mark contends that because the condition includes the term "drugs" it is vague and overbroad. He claims the prohibition "could include perfectly legal items that are available at every pharmacy without prescription," and that as written, it precludes him from being given aspirin by his mother or a school nurse. He also contends that a knowledge requirement must be added, and would have us modify the condition to read as follows: "Do not knowingly use or possess narcotics, prescription drugs, other controlled substances, related paraphernalia or poisons unless prescribed by a physician. Do not use any non-prescription drugs without the approval of your legal guardian." (Emphasis omitted.) The Attorney General contends that there are no constitutional deficiencies in the prohibition as stated by the juvenile court. Neither party cites any authority as specifically addressing the vagueness of probation conditions that prohibit the possession of drugs.

*Gaines* is instructive here. There, the court considered a challenge to a probation condition that prohibited the defendant from possessing or using " 'narcotics, dangerous drugs, or narcotic paraphernalia,' " where defendant argued that the term " 'dangerous drugs' " was unconstitutionally vague and overbroad and should be replaced with the term " 'controlled substances.' " (*Gaines*, *supra*, 242 Cal.App.4th at pp. 1040-1041.) The court modified the condition to prohibit possessing or using " 'narcotics, controlled substances, or narcotic paraphernalia without a valid prescription.' " (*Id*. at p. 1042.)

Noting the similarity between the language approved in *Gaines* and the language used by the juvenile court here, we conclude that the condition is constitutional as stated. The phrase "other controlled substances" makes it clear that the prohibited "drugs" are limited to drugs that are controlled substances, and therefore the category is sufficiently clear that there is no need to specify a knowledge requirement.

### iii.  *Knowledge Requirements for Other Conditions*

Without providing us any specific argument or authority, Mark contends that five other probation conditions should be modified. He contends that the school presence condition should be modified to state that he must not *knowingly* be on school grounds; the curfew to state that he not *knowingly* violate the curfew set by his parent or guardian;

the association condition to state that he not *knowingly* associate with anyone he knows to use, deal or possess illegal drugs; the obedience condition to state that he not *knowingly* disobey his parent or guardian; and the alcohol condition to state that he must not *knowingly* use or possess alcoholic beverages."

In the absence of evidence, argument or authority to suggest that a reasonable probationer could be confused as to the requirements set out in these conditions as imposed by the juvenile court, we decline to modify them to include express mens rea requirements. (See *Gaines*, *supra*, 242 Cal.App.4th at p. 1040.)

## DISPOSITION

The probation conditions ordered by the juvenile court are modified to strike the phrase "electronics including passwords." In all other respects, the juvenile court's dispositional order is affirmed.

_____
Miller, J.

We concur:

_____
Kline, P.J.

_____
Richman, J.

Trial Court:  Superior Court of Alameda County

Trial Judge:  Hon. Leo Dorado

Attorney for Defendant and Appellant   Peter B. Meadow
                By appointment of the Court of Appeal


Attorney for Plaintiff and Respondent
People               Kamala D. Harris
               Attorney General
               Gerald A. Engler
               Chief Assistant Attorney General
               Jeffrey M. Laurence
               Senior Assistant Attorney General
               Eric D. Share
               Supervising Deputy Attorney General
               Laurence K. Sullivan
               Supervising Deputy Attorney General