Filed 3/2/16  In re L.H. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re L.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>L.H.,<br><br>        Defendant and Appellant. | A144397<br><br>(Alameda County<br>Super. Ct. No. SJ14023222) |

**INTRODUCTION**

L.H., a juvenile adjudicated a ward under Welfare and Institutions Code[1] section 602, appeals from the disposition order on grounds that (1) the condition of probation requiring him to disclose passwords to his electronic devices was not related to his past or future criminality and violates the rule of *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), infringes on privacy and expression and is unconstitutionally overbroad, and poses a risk of illegal eavesdropping under the California Invasion of Privacy Act (Pen. Code, § 630 et seq.) ; (2) probation conditions requiring him to "be of good citizenship and good conduct" and "be of good behavior and perform well" at school and on the job are vague and overbroad ; and (3) the court erred by setting a maximum term of confinement because L.H. was not removed from parental custody.

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

At the outset we confront an issue that has recently divided our colleagues in this District, namely whether a condition of juvenile probation requiring a delinquent minor to "submit to . . . a search of [his] . . . electronics including passwords, day or night at the request of a Probation Officer or peace officer" is a valid condition of probation. After reviewing five recently published cases, all of which found the probation condition invalid as written, we agree with our colleagues that the condition cannot stand as imposed. We conclude that the probation condition here is invalid under the first and second prongs of *Lent*, *supra*, 15 Cal.3d 48. We do not deem it necessary to proceed to the third prong of *Lent* or to address the question of overbreadth. All of the cases we shall discuss have invalidated an identical search clause on one or the other of those grounds. At least on this record, the condition is not justified as imposed and must be narrowed if any type of electronic search condition is to be imposed. We therefore remand for further development of the record and a narrowing modification, if the court chooses to reimpose an electronic search condition.

Turning to the remaining issues, we find the claim under the California Invasion of Privacy Act was forfeited by failure to raise it in the court below. We hold the language "be of good citizenship and good conduct" and "be of good behavior and perform well" on the job is unconstitutionally vague and must be stricken. We find clerical error in the inclusion of a maximum term of confinement in the jurisdiction/disposition minute order and conclude that sentence must be stricken from the February 9, 2015 minute order. In all other respects we affirm the disposition order.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2014, L.H., then age 15, was observed by a police officer as he approached a residential address in Alameda, retrieved a package from the front porch that had been delivered by United Parcel Service, and ran away with the package. Upon being detained by the officer, L.H. admitted he had taken the package. The officer searched the minor's backpack and found a bottle of vodka with a Safeway security tab still affixed. L.H. admitted he had taken the bottle from Safeway. Both the package and the bottle of vodka were returned to their owners.

2

On July 9, 2014, the district attorney filed a section 602 petition alleging that L.H. committed two misdemeanors of concealing stolen property (Pen. Code, § 496) and petty theft (Pen. Code, § 484). The juvenile court was initially hesitant to grant L.H. informal probation due to his poor grades. Although he had been disciplined at school on occasion for being under the influence of marijuana, he was not perceived to have a "large problem" with marijuana. On October 14, 2014, in part because he had made a "significant improvement in his academics," the court placed L.H. on informal probation under section 654.2 without making a wardship finding. By December 15, 2014, however, the court noted there were again some "grade problems." The judge again admonished L.H., "I'm going to require all passing classes before I grant 654.2." On January 22, 2015, the juvenile court set aside informal probation in response to a progress report showing that L.H. had violated curfew and recently used marijuana.

On February 9, 2015, the court denied the minor's motion for reinstatement of informal probation. L.H. admitted the petty theft allegation in exchange for a negotiated dismissal of the receiving count "with facts and restitution open." Before the court accepted the minor's admission, his own counsel advised him that the "maximum possible consequence for this admission is up to six months in a locked facility." In accordance with the negotiated disposition, the district attorney dismissed count one. The court then adjudged L.H. a ward of the court under section 602. L.H. waived time and referral for a social study, preferring to be placed on formal probation the same day. The court ordered L.H.'s care, custody, control, and conduct to be under the supervision of the probation officer and placed him in his mother's home with numerous conditions of probation.

Among the probation conditions was the following: "You must submit to . . . a search of your person, any containers you may have or own, your vehicle, residence, electronics including passwords, day or night at the request of a Probation Officer or peace officer." Counsel for L.H. objected in court and in a written memorandum to the search condition insofar as it included "electronics including passwords" on grounds it did not have "anything to do with the events here, nothing in the reports the Court has

3

received including informal probation in [the minor]'s case." Trial counsel cited *Lent*, *supra*, 15 Cal.3d 481, but did not argue the condition was unconstitutionally overbroad, as does counsel on appeal.

Responding to the objection, the court made clear its reason for imposing the condition applied to all minors with drug issues: "With regards to the Search Clause, it's very clear that minors use the Internet to obtain drugs, and they also use the Internet to brag and post photos and statements about themselves using drugs and possession of drug paraphernalia. It's the only way we can properly monitor our minors with drug issues." The court therefore refused to remove the challenged language from the search condition. This timely appeal followed.

## DISCUSSION

### I. The Electronic Search Condition

L.H. challenges the electronic search clause on three grounds: (1) it is not related to his past or future criminality and therefore violates the rule of *Lent*, *supra*, 15 Cal.3d at page 486, (2) it infringes on constitutional rights of privacy and expression and is unconstitutionally overbroad, and (3) it poses a risk of illegal eavesdropping under the California Invasion of Privacy Act (Pen. Code, § 630 et seq.).[2]

> A. *The State of the Law in this District with Respect to the Electronic Search Condition*

This district has recently been called upon to resolve a number of appeals raising the same issue raised by L.H.. Five published opinions in the last few months have considered an identical or nearly identical electronic search condition:[3] *In re Mark C.*

---

[2] The issue under the California Invasion of Privacy Act (Pen. Code, § 630, et seq.) was forfeited by failure to object on that basis in the trial court. Defense counsel made no objection during the proceedings on that basis, and his written opposition to the motion also omitted reference to the Act. (*In re Alejandro R.* (2015) 243 Cal.App.4th 556, 563 (*Alejandro R.*).)

[3] Two more cases were published but rendered unciteable when review was granted: *In re Ricardo P.*(2015) 241 Cal.App.4th 676, review granted February 17, 2016, S230923, and *In re Patrick F.* (2015) 242 Cal.App.4th 104, review granted and briefing deferred February 17, 2016, S231428. (See Cal. Rules of Court, rule 8.1105(e)(1).) The

4

(2016) 244 Cal.App.4th 520 (*Mark C.*) [Division Two]; *Alejandro R.*, *supra*, 243 Cal.App.4th 556 (*Alejandro R.*) (pet. rev. filed Feb. 2, 2016 in S232240) [Division One]; *In re J.B.* (2015) 242 Cal.App.4th 749 (*J.B.*) [Division Three]; *In re Malik J.* (2015) 240 Cal.App.4th 896 (*Malik J.*) [Division Three]; and *In re Erica R.* (2015) 240 Cal.App.4th 907 (*Erica R.*) [Division Two].[4]  All five cases have concluded that similar conditions were invalid as imposed, although they followed different routes to that conclusion, resulting in different dispositions: three have stricken the condition without modification (*Erica R.*, *J.B.* and *Mark C.*), and two have modified it in an effort to narrow its scope, though not both in the same way (*Malik J.* and *Alejandro R.*).

The cases, considered together, address the validity of the electronic search condition both under the *Lent* test, and under the constitutional overbreadth doctrine.  We address first their resolution of the issue on the first basis.

1.    Validity of the electronic search condition under the *Lent* test

Juvenile courts have broad discretion in establishing conditions of probation.  "The court may impose 'any . . . reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' " (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 940, citing § 730, subd. (b).)  A juvenile probation condition may be more intrusive or more onerous than an adult condition precisely because juveniles are more in need of guidance and supervision than

---

Supreme Court's order in *Patrick F.* described the issue in *Ricardo P.* as follows:  "Did the trial court err imposing an 'electronics search condition' on minor as a condition of his probation when it had no relationship to the crimes he committed but was justified on appeal as reasonably related to future criminality under *People v. Olguin* (2008) 45 Cal.4th 375 because it would facilitate his supervision?"

[4] In *Erica R.*, *J.B.*, *Alejandro R.*, and *Mark C.* the electronic search conditions of probation were also imposed by the same judge who imposed the condition on L.H., and his explanation for its necessity was similar in each of the cases: minors frequently use social media to "brag about their marijuana usage or drug usage, particularly their marijuana usage, by posting on the Internet, showing pictures of themselves with paraphernalia, or smoking marijuana." (*Erica R.*, *supra*, 240 Cal.App.4th at p. 910; see *Mark C.*, *supra*, 244 Cal.App.4th at pp. 520, 529; *Alejandro R.*, *supra*, 243 Cal.App.4th at pp. 556, 561; *J.B.*, *supra*, 242 Cal.App.4th at pp. 749, 753.)

5

adults and their constitutional rights are more circumscribed than the rights of adults. (*Alejandro R., supra*, 243 Cal.App.4th at p. 566; accord, *In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*).) The youthful offender is presumed to be more malleable and amenable to the development of better habits, so that the state is sometimes authorized to impose relatively onerous conditions on minors. (Compare *In re Luis F.* (2009) 177 Cal.App.4th 176, 189-192 (*Luis F.*) [upholding condition requiring minor to take psychotropic medication] with *People v. Petty* (2013) 213 Cal.App.4th 1410, 1416-1421 [same division struck similar condition imposed on adult].) "Although the goal of both types of probation is the rehabilitation of the offender, '[j]uvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment; it is an ingredient of a final order for the minor's reformation and rehabilitation.' " (*In re Tyrell J.* (1994) 8 Cal.4th 68, 81, overruled on other grounds in *In re Jaime P.* (2006) 40 Cal.4th 128, 130.) " 'In light of this difference, a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*); see, e.g., *Luis F.*, *supra*, at p. 189; *In re Antonio R., supra*, 78 Cal.App.4th at p. 941.) This rule derives from the court's role as *parens patriae.* (*In re Frank V.* (1991) 233 Cal.App.3d 1232, 1242–1243.) When the juvenile court exercises jurisdiction over a minor, it " ' "stands in the shoes" ' " of the parents, thereby occupying a " ' "unique role . . . in caring for the minor's well-being" ' " (*Erica R.*, *supra*, 240 Cal.App.4th at p. 912, quoting *Victor L.*, *supra*, at pp. 909–910), subject to our review of any probation conditions imposed for abuse of discretion. (*In re P.A.* (2012) 211 Cal.App.4th 23, 33.)

The juvenile court's discretion is not unlimited, however. The Supreme Court in *Lent* set forth three criteria for assessing the validity of a condition of probation: "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " (*Lent*, *supra*, 15 Cal.3d at p. 486.) The *Lent* test applies as well to conditions of juvenile probation. (*In re D.G.* (2010) 187 Cal.App.4th 47, 52–53.) The

6

test is framed in the conjunctive, so all three criteria must be satisfied before a condition of probation will be deemed unreasonable under *Lent*. (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) Accordingly, a condition of probation that forbids or requires conduct which is not itself criminal is valid only if that conduct is reasonably related either to the crime of which the defendant was convicted or to future criminality. (*Lent*, *supra*, 15 Cal.3d at p. 486; *In re Babak S.* (1993) 18 Cal.App.4th 1077, 1084.)

In *Erica R.*, the first of the cases to be published, the minor had been adjudged a ward of the court after she was found by a school counselor in possession of 30 to 45 orange pills that tested positive for amphetamine. (*Erica R., supra,* 240 Cal.App.4th at p. 910.) Although the counselor believed Erica was selling drugs on campus, an amended wardship petition alleged, and Erica R. admitted, only misdemeanor possession of Ecstasy. (*Ibid.*) *Erica R.* found "no relationship" between the electronic search condition and the minor's misdemeanor possession of Ecstasy and therefore held it failed the first prong of the *Lent* test. There was nothing in the record "connect[ing] Erica's use of electronic devices or social media to her possession of any illegal substance." (*Id.* at p. 912.) The People argued that "Erica's cell phone and electronic devices 'could have been used to negotiate the sales of the illegal substance,' " but the court reasoned that Erica had admitted only possession, not sale, of Ecstasy, and there was no evidence that Erica "ever used an electronic device in this way." (*Id.* at pp. 912–913.) Because possession and use of electronic devices is not itself illegal, the electronic search condition also failed the second *Lent* criterion. (*Id.* at p. 913.)

With respect to the third prong, *Erica R.* acknowledged the juvenile court had justified the electronic search condition based on "its experience that 'many juveniles, many minors, who are involved in drugs tend to post information [on the Internet] about themselves and drug usage.' " (*Erica R.*, *supra*, 240 Cal.App.4th at p. 913.) But our colleagues in Division Two found no meaningful link between the probation condition and the minor's future criminality and thus found the condition did not meet the third *Lent* criterion either. *Erica R.* reasoned " '[n]ot every probation condition bearing a remote, attenuated, tangential, or diaphanous connection to future criminal conduct can

7

be considered reasonable.' " (*Ibid.*) Because there was "nothing in this record regarding either the current offense or Erica's social history that connects her use of electronic devices or social media to illegal drugs," the link to future criminality was too tenuous to uphold the probation condition. (*Ibid.*) "In fact, the record is wholly silent about Erica's usage of electronic devices or social media" (*id.* at p. 913) and Erica's counsel argued that she did not even own a cell phone (*id.* at p. 910). *Erica R.* struck the probation condition. (*Id.* at p. 915.) Because it resolved the issue on *Lent* grounds, *Erica R.* did not address the constitutionality of the condition. (*Id.* at p. 911.)

In *Malik J.*, *supra*, 240 Cal.App.4th 896, on the other hand, Division Three found there was a reasonable connection between an electronic search condition and the minor's specific crime under the first prong of *Lent*. (*Id.* at pp. 901–902, 904.) Malik had been on juvenile probation for robbery and violated his probation by robbing in one night, with one or two companions, three different women near a BART station. (*Id.* at p. 899.) The search condition was similar to the one imposed on L.H. (*Id.* at p. 900.) The People justified the probation condition based on "Malik's history of robbing people of their cell phones and his claim that he does not himself own a cell phone." (*Id.* at p. 902.) They argued the probation condition would allow a probation or police officer to check the phone to determine whether it had been stolen. (*Ibid.*) The court recognized "Malik might use cell phones to coordinate with other offenders, and . . . he had previously robbed people of their iPhones." (*Id.* at p. 905.) For that reason, our colleagues in Division Three found the condition did not violate *Lent* because it was valid under the first prong. (*Ibid.*; accord, *People v. Ebertowski* (2014) 228 Cal.App.4th 1170, 1173, 1176–1177 [adult electronic search condition valid under first prong of *Lent*].)

The third prong of *Lent*—the relationship between the electronic search condition and the minor's future criminality—is the one that presents a closer and more difficult issue, which was addressed in the next case chronologically, *J.B.*, *supra*, 242 Cal.App.4th 749. *J.B.* involved facts very similar to our case in that J.B. was declared a ward under section 602 after he was caught stealing a shirt from a Sears store and was subjected to an electronic search condition of probation. (*Id.* at p. 752.) As in this case, the offense

8

leading to J.B.'s wardship did not involve drugs or electronic devices, but J.B. did admit having used marijuana for two and a half years, he had poor grades, and he had been " 'playing with his cell phone' " during an interview with his probation officer. (*Id*. at p. 753.) Our colleagues in Division Three, applying the third prong of *Lent* for the first time, aligned with *Erica R*. and concluded the electronic search condition was invalid under *Lent*, disagreeing with any analysis finding a reasonable relationship to future criminality. (*Id*. at pp. 755–759.) As we read the opinion, *J.B.* did not deny there was some rational relationship between the electronic search condition and the prevention or detection of future criminal activity, but it emphasized that the relationship must also be *reasonable*. (*Id*. at p. 757.) *J.B.* gauged the reasonableness of the relationship of the condition to future criminality through the lens of the juvenile's past criminality. (*Id*. at pp. 756–757.) It asked, in essence, not simply whether the condition itself would be reasonably efficacious in preventing future criminality, but whether it could be seen as a reasonable means for deterring future crime by this particular minor based on the nature of his past crime. (*Id*. at p. 757.)

Division One, however, has recently parted company with *Erica R.* and *J.B.* at the third stage of the *Lent* analysis. In *Alejandro R.*, *supra*, 243 Cal.App.4th 556, it disagreed with their analysis and found the third prong of *Lent* satisfied where the juvenile admitted a misdemeanor charge of being an accessory after the fact to the transportation and distribution of marijuana, a drug-related crime more serious than that committed by L.H.. (*Id.* at pp. 560, 567.) Alejandro "was found to be in possession of illegal drugs and a member of a drug sales operation." (*Id*. at p. 567.) The condition failed the first prong of *Lent* because "there was no evidence [Alejandro] used electronic devices or social media in the commission of the crime." (*Id*. at p. 564; see *id*. at p. 567.)

But moving to the third prong, *Alejandro R.* took issue with *Erica R.*, and especially with *J.B.*, insofar as they concluded the electronic search condition was not reasonably related to the minor's future criminality. (*Alejandro R.*, *supra*, 243 Cal.App.4th at pp. 564–567.) *Alejandro R.* held instead the condition was related to future criminality because Alejandro might, as the trial court feared, use his phone in

9

connection with marijuana distribution. (*Id.* at p. 567.) Moreover, the condition would assist the probation officer in monitoring Alejandro's compliance with the conditions of his probation. The electronic search condition was valid under *Lent* as a means by which law enforcement could check the minor's Internet postings to see if he was "boasting" about drug activity or was otherwise involved with drugs. (*Id.* at p. 568.) *Alejandro R.* therefore held the electronic search condition met the third requirement of *Lent* in that it was reasonably related to the minor's future criminality. (*Id.* at pp. 564–567.)

In so holding, *Alejandro R.* relied chiefly on *Olguin, supra*, a case involving an adult probation condition requiring the probationer to "notify his probation officer of the presence of any pets at [his] place of residence." (*Olguin, supra*, 45 Cal.4th at p. 378.) In that case, our Supreme Court held a probation condition "that enables a probation officer to supervise his or her charges effectively is . . . 'reasonably related to future criminality' " and thus passes the *Lent* test "even if [the] condition . . . has no relationship to the crime of which a defendant was convicted . . . ." (45 Cal.4th at pp. 380–381.) According to *Alejandro R.*, the electronic search condition passes the third prong of the *Lent* test because it is " 'reasonably related to enabling the effective supervision of [the appellant's] compliance with his other probation conditions,' " thus bringing it within the ambit of *Olguin, supra*, 45 Cal.4th 375. (*Alejandro R., supra*, 243 Cal.App.4th at p. 564; see *id.* at p. 560.) In *Olguin*, although this condition bore no reasonable relationship to the defendant's past crime (driving under the influence of alcohol), and although it applied to all pets "from puppies to guppies," the Supreme Court concluded it was valid under *Lent* because it protected the safety of the probation officer charged with "supervising [the] probationer's compliance with specific conditions of probation," which required "the ability to make unscheduled visits and to conduct unannounced searches of the probationer's residence" to "deter[] future criminality." (*Id.* at pp. 380–381, 383.) By *Alejandro R.*'s reckoning, *Olguin* holds it is enough that a condition of probation be reasonably related to monitoring the probationer for future violations, even if the defendant's crime of conviction was unrelated to the condition imposed. (45 Cal.4th at pp. 378, 380; *Alejandro R.*, at pp. 564–565.) *Alejandro R.* emphasized the expansive

10

scope of juvenile courts' supervisory authority over minor probationers and found the *Lent* test satisfied without much difficulty. (*Id.* at pp. 566–567.)

Finally, coming full circle, the most recent published case was *Mark C.*, *supra*, 244 Cal.App.4th 520, which was authored by the same justice who wrote *Erica R.* and reached the same result. Fundamentally, *Mark C.*, like *J.B.*, *supra*, 242 Cal.App.4th at pages 757–758, disagreed that *Olguin* should govern the validity of a probation condition for a juvenile offender where important privacy interests are infringed by the probation condition. "We do not read *Olguin* to hold that *every* condition that might enable a probation officer to supervise his or her minor charges more effectively is necessarily 'reasonably related to future criminality.' (*Olguin*, *supra*, 45 Cal.4th at p. 381.) Such a reading would effectively eliminate the reasonableness requirement that the court in *Olguin* discusses at some length. (*Id.* at p. 382.) Requiring Mark to copy his probation officer on all his e-mails, and forward all his postings on social media to his probation officer might also facilitate his probation officer's supervision of him, as would requiring him to wear a body camera. But *Olguin* no more justifies these hypothetical probation conditions than the actual electronics search condition in this case." (*Mark C.*, *supra*, at p. 533.) Thus, emphasizing that the supervisorial authority juvenile courts have over minor probationers, though broad, is not unlimited, *Mark C.*, *J.B.* and *Erica R.* gave close scrutiny to electronic search conditions under the third prong of *Lent*, and struck these conditions outright where only tenuously justified by concerns about future criminality.[5] (*Mark C., supra,* at pp. 532-535; *J.B., supra,* at pp. 755-759; *Erica R., supra,* 240 Cal.App.4th at pp. 912-915.) As noted, the applicability of *Olguin* in the present context is now pending before the Supreme Court. (See fn. 3, *ante*.)

_____

[5] In so doing, *Mark C.* emphasized that juvenile probationers, unlike adult probationers, do not have the right to refuse conditions of probation, rather such conditions are imposed as an ingredient of a final dispositional order. (*Mark C.*, *supra*, at pp. 530, 534.) *Mark C.* emphasized that juvenile conditions of probation are permissible only if " ' " ' "tailored specifically to meet the needs of the juvenile" ' " ' " and concluded, "This restriction has particular application to search conditions imposed on juveniles." (*Id.* at p. 530.)

2.        <u>Validity of the electronic search condition under the overbreadth doctrine</u>

As explained above, *Malik J.* was the first case from this district to uphold the search condition under the *Lent* test. Division Three then proceeded to an analysis of the constitutional overbreadth doctrine and concluded, in light of its intrusive nature, the condition was overbroad and required narrowing. (*Malik J.*, *supra*, 240 Cal.App.4th at pp. 902–904.) "Under the overbreadth doctrine, 'conditions of probation that impinge on constitutional rights must be tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.' [Citations.]" (*Id.* at p. 902; see, e.g., *Victor L.*, *supra*, 182 Cal.App.4th at p. 910.) *Malik J.* found a "mismatch" in such tailoring "because the threat of unfettered searches of Malik's electronic communications significantly encroaches on his and potentially third parties' constitutional rights of privacy and free speech. 'Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans "the privacies of life," [citation]. The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought.' " (*Malik J.*, *supra*, 240 Cal.App.4th at p. 902, quoting *Riley v. California* (2014) 573 U.S. ___, 134 S.Ct. 2473, 2494–2495.)

In view of these significant privacy implications, *Malik J.* held the electronic search condition had to be "modified to omit the requirement that Malik turn over passwords to social media sites and to restrict searches to those electronic devices found in his custody and control." (*Malik J.*, *supra*, 240 Cal.App.4th at p. 902.) But in a twist not appearing in the other cases, *Malik J.* focused on whether the content legitimately accessible to law enforcement was stored on a given device itself, or whether it was stored remotely, reasoning that "[i]nformation stored in a remote location cannot be considered in the probationer's possession nor entirely within his or her control." (*Id.* at p. 903.) Since the probation condition required disclosure of passwords only to "electronic devices" "within [the minor's] control," Division Three construed the electronic search condition as self-limiting to data stored on the device, and restricted the

government's access to data stored remotely. (*Id.* at pp. 900, 903-904.) Because "identifying whether an electronic device is stolen has no relationship to accessing the content of [the minor's] social media accounts" (*id*. at p. 902), *Malik J.* modified the condition of probation to allow a search of such electronic devices, so long as they were not attached to the Internet or a cellular connection (*id*. at pp. 903, 906).[6]

Similarly, *Alejandro R.* concluded the electronic search condition passed the *Lent* test and, like *Malik J.*, proceeded to analyze the overbreadth issue. Like *Malik J.*, it also found the electronic search condition to be unconstitutionally overbroad and held it required narrowing if it was to survive at all. In both cases, privacy concerns tended to figure more prominently at the overbreadth stage of the analysis than they did in the *Lent* stage. (See *Alejandro R.*, *supra*, at p. 567 ["the applications and Web sites available through electronic devices contain information ' "about *all aspects* of a person's life," including financial, medical, romantic, and political' "]; *Malik J.*, *supra*, at p. 902 ["unfettered searches of [a minor's] electronic communications significantly encroaches on his and potentially third parties' constitutional rights of privacy and free speech"].) "Because the probation condition as drawn 'permits review of all sorts of private information that is highly unlikely to shed any light on whether [the appellant] is complying with the other conditions of his probation, drug-related or otherwise,' " *Alejandro R.* held the condition was overbroad. (*Alejandro R.*, *supra*, 243 Cal.App.4th at pp. 567–568.) Accordingly, the court undertook to narrow the condition to bring it within constitutional bounds. (*Id*. at p. 568.)

But unlike *Malik J.*, *Alejandro R.* did not modify the electronic search condition to ensure the searched devices were disconnected from the Internet. Rather, *Alejandro R.* narrowed it to "media of communication reasonably likely to reveal whether appellant is

---

[6] Division Three narrowed the electronic search condition by allowing probation and police officers to access only "electronic devices in Malik's custody and control [and] only after the device has been disabled from any internet or cellular connection and without utilizing specialized equipment designed to retrieve deleted information that is not readily accessible to users of the device." (*Malik J.*, *supra*, 240 Cal.App.4th at p. 906.)

13

boasting about drug use or otherwise involved with drugs . . . ." (*Alejandro R.*, *supra*, 243 Cal.App.4th at p. 568.)  Thus, Division One thought the narrowing of the electronic search condition should be done on the basis of where likely drug evidence or evidence of forbidden associations might be found, rather than where the data was stored.[7]

B.      *We Will Vacate the Electronic Search Probation Condition Imposed On L.H. And Remand for Further Development of the Record*

In terms of the seriousness of the minor's misconduct, our case is more like *Erica R.* and *J.B.* than *Malik J.* and *Alejandro R.*  The record in our case contains nothing indicating a connection between L.H.'s use of marijuana and any electronic device.  He did have two disciplinary incidents at school related to his use of marijuana, he also tested positive for marijuana in January 2015, and was found in possession of marijuana on one occasion , but there is no indication he was involved in drug sales.[8]  There was also no evidence that L.H. used a cell phone, social media, or the Internet to buy or sell drugs.  Thus, there was even less reason to impose the condition on this minor than there was in *Erica R.*  The condition was not reasonably related to L.H.'s past criminal conduct, which amounted to nothing more than petty theft.  In light of its close similarity to *J.B.*, we follow that case in finding the probation condition fails the first prong of the *Lent* test. Of course, the probation condition also fails the second prong because

---

[7] Accordingly, *Alejandro R.* modified the condition to read as follows: the minor must "[s]ubmit [his] person and any vehicle, room, or property under [his] control to a search by the probation officer or a peace officer, with or without a search warrant, at any time of the day or night.  Submit all electronic devices under [his] control to a search of any medium of communication reasonably likely to reveal whether [he is] boasting about [his] drug use or otherwise involved with drugs, with or without a search warrant, at any time of the day or night, and provide the probation or peace officer with any passwords necessary to access the information specified. Such media of communication include text messages, voicemail messages, photographs, e-mail accounts, and social media accounts." (*Alejandro R.*, *supra*, 243 Cal.App.4th at pp. 569–570.)

[8] When L.H. was initially arrested, his companion was in possession of concentrated cannabis, but there is no indication L.H. possessed any drugs.  It was reported, however, that L.H. was under the influence of marijuana when he was arrested.

14

possession and use of electronic devices is not illegal. (*Erica R.*, *supra*, 240 Cal.App.4th at p. 913.)

Having found the probation condition fails to pass the first and second prongs of *Lent*, we proceed no further with the analysis. All five of the cases we have discussed concluded that the condition cannot stand as articulated by the juvenile court. Two additional cases on this issue are now pending before the Supreme Court (see fn. 3, *ante*), *Alejandro R.* is pending on a petition for review (S232240), and the time has not yet expired for the filing of a petition for review in *Mark C.* Given the present unsettled state of the law, we assume without deciding that the condition as written is invalid under either the third prong of the *Lent* test or under the overbreadth doctrine, and will therefore vacate the condition at issue here, subject to reinstatement upon remand following additional factual development of the record.

We share some of the concerns about privacy that many of our colleagues have expressed in the context of both *Lent* prong three and the *Sheena K.* issue of narrowing. Content available on a probationer's electronic device or social media Web site may include intimate messages and photos, posts from other Web sites which may disclose the probationer's or the third party's political and religious affiliations, memberships in clubs or organizations, and other sensitive personal information having nothing to do with drug use or forbidden associations. Once a minor has been forced to divulge his or her passwords to a probation or police officer, the intrusion upon the minor's privacy rights can be massive, though much of the information revealed would undoubtedly be unrelated to legitimate monitoring by the probation department. Data stored on electronic devices or in social media sites that may reflect criminal behavior or forbidden associations may be so intermingled with other entirely unrelated private information that it is not technologically possible to segregate out the protected information from that legitimately open to view by government authorities. But we also recognize that these privacy concerns must be balanced against a strong countervailing state interest in effective juvenile probation supervision. That state interest is two-fold. First, juvenile probation serves to protect the public by monitoring wards for future criminality.

15

Second, juvenile wardships are designed to provide maximum opportunity for minors to turn their lives around, while satisfying the vital need to give the probation department the tools it needs to help maximize this rehabilitative goal. (*In re Jose C.* (2009) 45 Cal.4th 534, 555 ["The purposes of juvenile wardship proceedings are twofold: to treat and rehabilitate the delinquent minor, and to protect the public from criminal conduct. [Citations.] The preservation of the safety and welfare of a state's citizenry is foremost among its government's interests, and it is squarely within the police power to seek to rehabilitate those who have committed misdeeds while protecting the populace from further misconduct."].)

To further these goals, "'the juvenile court has statutory authority to order delinquent wards to receive 'care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances.' " (*In re Charles G.* (2004) 115 Cal.App.4th 608, 615.) "All dispositional orders in a wardship case must take into account the best interests of the child and the rehabilitative purposes of the juvenile court law. [Citation.]" (*In re S.S.* (1995) 37 Cal.App.4th 543, 550.) The basis for imposing an electronic search condition in service of the objectives of juvenile probation will sometimes be manifestly plain, given the nature of the ward's criminal record (e.g., a history of violent conduct) or the ward's particular rehabilitative needs (e.g., a history of mental illness posing risks to others). For some wards, in short, there may be no meaningful alternative to having what amounts to an electronic window into every corner of their lives, at all times. But in the absence of public safety or officer safety concerns, these conditions ought not to be imposed routinely.

The record before us is thin. All we know is that L.H. stole a UPS package off of someone's porch, shoplifted a bottle of vodka from a store, and had been disciplined at school for marijuana use and possession. We have no basis to assess the seriousness of the risk of future criminality by L.H., and there is nothing in the record but the broadest of generalities to explain why forced turnover of account passwords, in particular, is required for L.H.'s rehabilitative needs. As a precautionary measure to guard against any

16

worsening of the minor's involvement with drugs, it was of course fully within the court's discretion to put in place an additional, more intensive form of drug monitoring, but the reasons for employing an electronic search condition to accomplish that— compared to, say, increased frequency of drug testing—are vague and have no specific connection to the facts of this case. The juvenile court indicated that "minors use the Internet to obtain drugs, and they also use the Internet to brag and post photos and statements about themselves using drugs and possession of drug paraphernalia," but the record is bereft of anything to indicate why *this* particular minor might do any of those things or why monitoring *his* behavior on the Internet is "*only* way" to detect his drug-related activity.

Equally important, the record here not only contains few details about why an electronic search condition is justified, it is also silent with respect to what kind of electronic devices the minor uses, *if* in fact he uses any such devices at all,[9] and if so, what apps he uses, and how those devices and applications are used by L.H.

Although our colleagues in two of the cases we have discussed have sustained such conditions under *Lent* and gone on to resolve overbreadth problems by imposing modifications on appeal (see *Sheena K.*, *supra*, 40 Cal.4th at pp. 889–892), we believe it is inappropriate to take either route here, at least as the record now stands. Before any decision is made on *Lent* prong three and, if required, on *Sheena K.* narrowing, development of a more robust factual record is necessary, starting with some specifics around the justification for imposing an electronic search condition in the first place. To decide either of these issues on the present record would require that we engage in much speculation about the facts bearing on future criminality, and, if it is necessary to go further and consider narrowing, about how the scope of permitted electronic search might best be fitted to the minor's particular electronic communication usage habits. As a practical matter, these issues are bound up with one another. Because any saving

_____

[9] For a juvenile from an economically disadvantaged background, the answer to that question could well be that he does not use any because he cannot afford them.

17

modifications should closely track the specific circumstances justifying imposition of the electronic search condition, thus limiting the scope of permitted search to its justifying rationale as far as possible, the juvenile court—working with minor's counsel, and with the probation department—is best-positioned to assess how any such modifications should be formulated.  We will therefore strike the electronic search condition imposed on L.H., as it is currently framed, and leave to the juvenile court whether the condition should be reinstated, with whatever reasonable narrowing modifications it may wish to adopt after further development of the record.

## II.    Probation Conditions Requiring "Good Citizenship," "Good Conduct," "Good Behavior," and Requiring the Minor to "Perform Well" at School and at Work

L.H. next challenges the conditions of probation insofar as they require him to "be of good conduct" or "good citizenship and good conduct," and as part of a condition requiring him to attend school and his job on time and regularly, that he "be of good behavior and perform well."  He claims the quoted terms are unconstitutionally vague and fail to ensure that the minor himself will be able to ascertain what is required of him and conform his behavior accordingly, and also fail to provide an explicit standard for those monitoring his compliance, thereby opening the door to subjective enforcement and the " ' "dangers of arbitrary and discriminatory application." ' " (*Sheena K., supra,* 40 Cal.4th at p. 890; see *Grayned v. City of Rockford* (1972) 408 U.S. 104, 108–109.)  He also claims the conditions are overbroad.  Because we conclude the terms are in some respects unconstitutionally vague, we do not address his overbreadth argument.

### A.    Forfeiture

The People respond that L.H. forfeited this issue by failing to object below and that the juvenile court explained to L.H. what the challenged language in the conditions of probation required.  An objection to a condition of probation in the trial court is ordinarily required to preserve that issue for review.  Accordingly, *People v. Gardineer* (2000) 79 Cal.App.4th 148, 151–152, refused to address a challenge to an "observe good conduct" condition of probation, finding it waived by failure to object.

18

L.H. argues we should reach the merits of his contentions regardless because, although conduct-related explanations were provided orally to him by the juvenile court, he raises now a challenge to the oral and written conditions of probation which added the specific offending language. The problem with L.H.'s argument with respect to the "good conduct" condition is that it was initially imposed orally, and defense counsel failed to object. Had he objected, the court might have explained the conduct requirement in more detail or might have eliminated the challenged language. L.H. contends, however, that we should review the written probation conditions on their face under the rule that probation conditions, unconstitutional on their face and presenting a pure question of law, may be challenged on appeal despite the failure to object in the trial court, so long as the alleged error is "capable of correction without reference to the particular sentencing record developed in the trial court." (*Sheena K.*, *supra*, 40 Cal.4th at pp. 887–888; accord, *In re Luis F.*, *supra*, 177 Cal.App.4th at p. 181.)

Given the claim of facial invalidity, we exercise our discretion to review the "be of good citizenship and good conduct" probation condition, in part because we have twice before suggested to judges of the Alameda County Superior Court that they oversee the deletion of the "good conduct" condition from the county's standard forms.[10] The court has not heeded our suggestions. We are mindful that modifying forms of this nature often takes time and is far more involved than simply making a word processing change, but we are compelled to reiterate our advice as a respectful reminder.

We also exercise our discretion to review the condition requiring L.H. to "be of good behavior and perform well" in school and at work. The court did not orally impose the challenged condition and the court's minute order does not reflect the complained-of language. It appears only in a separate written list of "Conditions of Probation and Court Orders." Although the written document shows the minor signed a copy, and presumably received a copy, on the date of the jurisdiction/ disposition hearing, it appears this was

---

[10] *In re D.R.* (Oct. 28, 2013, A137789) [nonpub. opn.]; *In re N.B.* (May 21, 2013, A136160) [nonpub. opn.].

not provided to L.H. until after the oral proceedings were concluded. It thus appears there may not have been an opportunity for his attorney to object to the written conditions. We therefore address all of L.H.'s arguments relating to conduct and performance conditions.

        *B.*     *The "good conduct" condition is unconstitutionally vague and must be stricken*

The challenged language of the probation order "be of good conduct" is very broad and has been challenged numerous times in this District, oftentimes with success.[11] We take judicial notice of nonpublished cases noted in footnotes 10 and 11 not to rely on their legal analysis as precedent, but to demonstrate the regularity with which the issue has been litigated in our District. (Evid. Code, §§ 452, 459; cf. Cal. Rules of Court, rule 8.1115.) We find the conjoined phrase "good citizenship" to be equally broad and ill-defined.

A probation condition is unconstitutionally vague if it is not " ' "sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' [Citation.] A restriction failing this test does not give adequate notice—'fair warning'—of the conduct proscribed." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.) In determining the adequacy of the notice given, "we are guided by the principles that 'abstract legal commands must be applied in a specific *context*,' and that, although not admitting of 'mathematical certainty,' the language used must have ' "*reasonable* specificity." ' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 890; see generally, *In re Kevin F.* (2015) 239 Cal.App.4th 351, 357–358.)

---

[11] See, e.g., *In re Brandon C.* (Feb. 18, 2014, A138960) [nonpub. opn., Division Two; challenge successful]; *In re Adrian B.* (Apr. 16, 2013, A131529) [nonpub. opn., Division Two; challenge unsuccessful because condition was explained orally]; *In re A.V.* (Dec. 12, 2012, A133762) [nonpub. opn., Division Five; challenge unsuccessful because condition construed as "obey all laws" condition]; *In re A.T.* (Feb. 21, 2012, A131996) [nonpub. opn., Division Three; challenge successful]; *In re N.R.* (Dec. 20, 2011, A130621) [nonpub. opn., Division Three; challenge successful].

20

With these principles in mind, we conclude that the first probation condition under scrutiny is impermissibly vague. The condition that L.H. "be of good citizenship and good conduct" lacks specificity and fails to provide meaningful guidance to L.H. or the court in determining what conduct is prohibited, and the People have not offered any suggestions as to what the condition actually requires. They have only argued that the court gave "comprehensive explanations of the culled phrases . . . challenged on appeal." While we agree that the court explained orally what it means to "be of good behavior" at school, we see nothing in the court's admonitions clarifying what it means to "be of good citizenship and good conduct" more generally.

Arguably, the condition serves as a catchall label for other conditions imposed, such as directives that L.H. obey all laws, obey his parents, attend school, abide by his curfew, refrain from using drugs or alcohol, stay away from others who use drugs and alcohol, and the other conduct-related conditions recited above. But since each of the other conditions was spelled out individually on the "Conditions of Probation and Court Orders," adding a separate non-specific catchall for already-imposed specific conditions is duplicative and unnecessary, and it provides no notice of additional prohibited behavior. Because it is impermissibly vague and serves no legitimate purpose that we can discern, the condition instructing L.H. generally to "be of good citizenship and good conduct" was improperly imposed.

### C.  *The "good behavior and perform well" condition must be stricken as it applies to the minor's work, but not as it applies to his school participation*

The "good behavior" component of the challenged school and work condition suffers from the same vagueness concerns present in the "good conduct" condition. Likewise, the "perform well" language is imprecise and subjective. (See *In re Angel J.* (1992) 9 Cal.App.4th 1096, 1101 (*Angel J.*).)  At school, this directive could encompass more than just grades, such as attendance or participation. Indeed, even a probation condition requiring the minor to maintain "satisfactory grades" has been held too vague to be enforced. (*Id.* at pp. 1101–1102.)  The court in *Angel J.* held that in order to pass constitutional muster, the term "satisfactory" required a more specific definition. (*Id.* at

21

p. 1102.) *Angel J.* defined "satisfactory grades" as passing grades in each graded subject (i.e., a D or above in an A through F grading system) and modified the condition of probation accordingly. (*Ibid.* & fn. 7.)

But we think the court's detailed oral explanations in this case adequately defined the terms "good behavior" and "perform well" with respect to school participation so as to allow the condition to pass constitutional muster. By giving detailed direction for grades, attendance and more, it gave shape to the vague language contained in the written probation conditions. We therefore agree with the People that the "be of good behavior and perform well" condition of probation was adequately explained orally by the judge insofar as school participation and performance were concerned. *Sheena K.*, *supra*, 40 Cal.4th at page 891, recognized that "a probation condition that otherwise would be deemed vague may be constitutional because the juvenile court offered additional oral or written comments clarifying" its meaning. (Accord, *In re Kevin F.*, *supra*, 239 Cal.App.4th at p. 358.)

In the present case the court did just that with respect to the challenged condition as it related to school behavior and performance. Specifically, the juvenile court instructed L.H. that he is not to be on any campus or school grounds unless enrolled, or accompanied by an adult, or authorized by the school staff; and he must attend school "every day on time . . . every class on time, stay through the entirety of every class, do all . . . homework, and pass all . . . classes." Additionally, L.H. was told he must "obey all school rules and regulations," and he is not to "leave the school campus without permission of school officials or the Probation Officer." The court more than once orally admonished L.H. that his "main focus" should be on "school, school, school," leaving no doubt that the court expected him to attend regularly, obey the rules, and attain passing grades. This same formula for success in school had been driven home by the court from early on in the proceedings because L.H. had been receiving poor grades ("all Fs and one D"). L.H. showed significant improvement in school after receiving that advice from the court. Thus, we infer L.H. understood what was required, and we find the condition as imposed in this case was not vague or overbroad with respect to the minor's expected

22

school participation. We do not find it necessary to modify the "be of good behavior and perform well" clause.

While "be of good behavior and perform well" could be called surplusage in the context of school performance, given the court's more specific oral explanation, having that language embodied in the written conditions of probation (which apparently were given to L.H.) may serve as a reminder to him that he must not only attend school but also must do his homework, achieve passing grades, and obey school rules. Accordingly, we do not deem it necessary to strike the written condition, as that might signal to L.H. that attendance alone is required, thereby undercutting the court's supervisory power over him. Nor do we modify the condition because its scope was defined by the oral pronouncements. The inclusion of the umbrella phrases "good behavior" and "perform well" does not offend the constitution. With respect to the "good citizenship and good conduct" condition, which relates to the minor's overall behavior and as to which no oral guidelines were provided, we opt to strike the vague language as unhelpful and meaningless surplusage. The catchall language in the school attendance and performance condition is different in that it bears additional meaning by triggering operation of the orally imposed conditions, which were not otherwise prescribed in writing. Therefore we conclude the language need not be stricken from the probation condition insofar as school participation is concerned.

With respect to being of good behavior and performing well at work, on the other hand, the minor did not receive clarifying instruction. The court's oral pronouncements provided no guidance as to how L.H. could "perform well" at a job, which lacks the structure of the grading system used to define satisfactory performance in *Angel J.*, *supra*, 9 Cal.App.4th 1096 at page 1102 and footnote 7. Therefore, as applied to work participation the probation condition remains unacceptably vague and is invalid. The "good behavior" component is unconstitutionally vague for the same reasons the "be of good conduct" clause is unconstitutionally vague. The "perform well" component is vague because standards of performing well vary by work setting and by supervisor. L.H. was not employed at the time of the hearing, but was seeking employment, and the

23

court's main advice about work was not to let it interfere with school: "Work is good, and that's very important, because it's a way of getting money, but school is the main focus. And the nice thing about these [job] programs, they'll never put you in a work situation that will in any way make it more difficult to do school. It's supposed to be a nice compliment [*sic*] to school. [¶] So school, school, school." L.H. was given no standards by which his behavior on the job would be judged and no explanation of what was required before the court would consider him to be performing well. The language must be stricken from the probation condition with respect to work participation. This may be accomplished simply by striking the words "or job" from the written condition.

### III. Maximum Term of Confinement

Finally, L.H. argues that the court erred in setting a maximum term of confinement because he was not removed from parental custody, and the establishment of a maximum term of confinement was not only unnecessary, but unauthorized. Section 726, subdivision (d)(1) provides: "(1) If the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." Given the introductory clause, several cases have held it is improper for a court to set a maximum term of confinement in a case where the minor is not removed from the parental home. (*In re A.C.* (2014) 224 Cal.App.4th 590, 592 (*A.C.*); *In re Matthew A.* (2008) 165 Cal.App.4th 537, 541 (*Matthew A.*); *In re Ali A.*(2006) 139 Cal.App.4th 569, 573–574 (*Ali A.*).)

In the foregoing cases, the courts agreed that setting such a term at a disposition hearing is beyond the juvenile court's statutory authority, but have disagreed whether a remedy is necessary. As one court noted, the erroneous inclusion of the term has "no legal effect" and thus causes no prejudice. (*Ali A.*, *supra*, 139 Cal.App.4th at p. 574.) Accordingly, the Third District held it was not necessary to order the maximum term of confinement stricken from the order. (*Ibid*.)

24

The courts that have provided a remedy have done so for prophylactic reasons. The Second District, Division Eight, held not only that the statute did not empower juvenile courts to specify a maximum term if the minor was not being removed from the parental home, but found that "criticism of this practice in prior opinions without actually ordering a correction of the disposition seems to have had little effect." (*Matthew A.*, *supra*, 165 Cal.App.4th at p. 541.) Therefore, the court ordered the statement in the disposition order stricken. (*Ibid.*) More recently, the Third District reversed the position it took in *Ali A.* and agreed with *Matthew A.* as to the appropriate disposition. "[T]he error of including maximum terms in noncustodial orders continues, unnecessarily depleting the limited resources of the judicial system. To stop this error, and quell the debate over its effect, we now conclude that where a juvenile court's order includes a maximum confinement term for a minor who is not removed from parental custody, the remedy is to strike the term." (*A.C.*, *supra*, 224 Cal.App.4th at p. 592.)

The People rely on *In re P.A.*, *supra*, 211 Cal.App.4th 23, in which the Fourth District, Division Two, held it was *not* error for the court to mention the maximum term of confinement at a jurisdictional hearing. (*Id.* at pp. 31–32.) Because "the juvenile court did not mention a maximum term of confinement at the disposition hearing or in its dispositional order," the court found no error and no remedy was necessary. (*Ibid.*) We agree that because the court in our case mentioned the maximum term of confinement only during the plea colloquy at the jurisdictional hearing, there was no judicial error.[12] (Cf. *In re M.G.* (2014) 228 Cal.App.4th 1268, 1275, fn. 4.)

_____

[12] The reporter's transcript reflects only two mentions of the maximum term of confinement, both at the jurisdictional phase of the hearing. The defense attorney, not the judge, first mentioned it. Asked to voir dire his client, defense counsel advised L.H., among other things, "The maximum possible consequence for this admission is up to six months in a locked facility. Do you understand that?" L.H. responded, "Yes." The judge thereafter asked L.H. "having all your rights in mind as well as the possible confinement in a locked facility for up to six months," whether he admitted or denied the petty theft allegation of the petition, and L.H. admitted it.

The minute order in our case, however, unlike that in *In re P.A.*, *supra*, does reflect as one of the court's orders: "The maximum time the child may be confined in secure custody for the offenses sustained in the petition before the court is 6 months." This appears to have been a clerical error. Because the same written order served as both a jurisdictional and dispositional order, it should not have included a maximum term of confinement. Because we remand for other modifications, we will order that sentence stricken from the minute order under the pragmatic reasoning of *A.C.*, *supra*, 224 Cal.App.4th at page 592 and *Matthew A.*, *supra*, 165 Cal.App.4th at page 541.

## DISPOSITION

The conditions of probation are modified as follows: (1) by striking the language "electronic including passwords" from the search condition of probation reflected in the minute order and the words "electronics and passwords" from the "Conditions of Probation and Court Orders" (collectively, the "Electronic Search Condition"); (2) by striking the language "be of good citizenship and good conduct" from the "Conditions of Probation and Court Orders" each time it appears; (3) by striking the language "or job" from the condition requiring L.H. to "attend classes or job on time and regularly; be of good behavior and perform well"; and (4) by striking from the minute order dated February 9, 2015, the language: "The maximum time the child may be confined in secure custody for the offenses sustained in the petition before the court is 6 months." The case is remanded for fuller development of a record that would support narrowing modifications to the Electronic Search Condition, should the court decide to reimpose such a condition. The Electronic Search Condition may be reinstated upon remand, subject to such modifications. In all other respects the dispositional order is affirmed.

26

_____

Streeter, J.

We concur:

_____

Ruvolo, P.J.

_____

Reardon, J.

A144397/*In re L.H.*

27