Filed 4/11/16  In re Elijah H. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Elijah H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>Elijah H.,<br><br>    Defendant and Appellant. | A144359<br><br>(Contra Costa County<br>Super. Ct. No. J14-01346) |

Seventeen-year-old Elijah H. admitted carrying a loaded firearm in public (Pen. Code, § 25850, subd. (a)) in the Fresno County juvenile court.  After transfer to Contra Costa County, he was committed to Bar-O-Boys Ranch in Del Norte County.  Elijah challenges the dispositional order, contending the juvenile court abused its discretion in committing him outside of the county, failed to consider his special educational needs, and imposed unreasonable or unconstitutional probation conditions.  We remand the matter for further proceedings so the juvenile court can modify certain probation conditions and determine whether further evaluation should be conducted of Elijah's educational needs.  Otherwise, we affirm the judgment.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of December 11, 2014, two Fresno police officers suspected Elijah was a truant when they saw him walking near a high school.  Elijah was silent when questioned about why he was not in school.  When the officers got out of their car,

Elijah ran but was ultimately apprehended. During a patdown search, a loaded semiautomatic pistol was found in Elijah's jacket pocket. Also found was a yellow pill, which the officers believed to be Ecstasy. After waiving his *Miranda*[1] rights, Elijah said he purchased the gun for protection after his cousin was injured in a gang-related shooting.

The Fresno County District Attorney filed a wardship petition, under Welfare and Institutions Code section 602,[2] charging Elijah with possession of a firearm by a minor (Pen. Code, § 29610), carrying a loaded firearm in public (*id.*, § 25850, subd. (a)), and resisting, obstructing, or delaying an officer engaged in his duties (*id.*, § 148, subd. (a)(1)). The detention report indicated Elijah had been diagnosed with attention deficit hyperactivity disorder (ADHD) and had a completed individualized education plan. Elijah was born in Fresno, where he had lived with his mother and older sister.[3] When Elijah was five years old, he and his sister were removed from their mother's custody when she became a suspect in a murder investigation. He was placed in several foster homes after removal from an aunt's care due to physical abuse. Elijah's maternal cousin, Sheila, became his legal guardian and eventually adopted him after Elijah's mother was murdered. In April 2014, Elijah was living with Sheila in Contra Costa County when he left home without permission and went to Fresno, where his sister was living with a maternal aunt. Many of Elijah's Fresno relatives were gang members or associates, and Elijah associated with the same gang.

At the detention hearing, Elijah admitted carrying a loaded firearm in public and the remaining charges were dismissed. Elijah was ordered detained in juvenile hall and the matter was transferred to Contra Costa County for disposition.

At the conclusion of a contested dispositional hearing, the juvenile court adjudged Elijah a ward of the court, vested his custody with the probation department, and ordered

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

[2] Undesignated statutory references are to the Welfare and Institutions Code.

[3] Elijah's father was serving a state prison sentence.

2

his commitment to the Bar-O-Boys Ranch in Del Norte County for a period not to exceed two years, 10 months, and 18 days. Elijah filed a timely notice of appeal.

## II.    DISCUSSION

On appeal, Elijah argues: (1) the juvenile court abused its discretion in committing him to Bar-O-Boys Ranch; (2) remand is necessary under *In re Angela M.* (2003) 111 Cal.App.4th 1392 (*Angela M.*) for evaluation of his special educational needs; (3) a probation condition allowing warrantless search of his electronic devices is unreasonable and unconstitutionally overbroad; and (4) a probation condition prohibiting possession of deadly or dangerous weapons is unconstitutionally vague. We conclude that the juvenile court did not abuse its discretion in making the commitment order and the electronic search condition is valid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), superseded on other grounds as stated in *People v. Wheeler* (1992) 4 Cal.4th 284, 290. However, we agree the two challenged probation conditions are respectively overbroad and vague as written. We will remand the matter to the juvenile court to modify the conditions and determine whether any further evaluation of Elijah's special educational needs is necessary.

A.    *Commitment to Bar-O-Boys Ranch*

Elijah maintains the juvenile court abused its discretion by committing him to the Bar-O-Boys Ranch, approximately 400 miles away in Del Norte County.[4] Specifically, he contends "[t]he juvenile court abused its discretion by failing to select the least restrictive appropriate placement closest to [his] home."

1.    *Background*

In advance of the disposition hearing, the probation officer opined in his written report: "[Elijah] is in need of a structured rehabilitative program that will address his behavior, poor academic progress, anger issues and association with negative peers.

---

[4] On our own motion, we take judicial notice that the distance between Bar-O-Boys Ranch and Sheila's home in Contra Costa County is approximately 400 miles. (Evid. Code, § 452, subd. (h); *In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1153 (*Nicole H.*).)

These needs must be addressed in a setting outside of the community as [Elijah] has demonstrated that he is a threat to public safety." Elijah had no formal juvenile history. However, when he was 13 years old, Elijah was referred to the probation department for an alleged sexual battery (Pen. Code, § 243.4, subd. (a)); no petition was filed. Elijah admitted smoking marijuana and using Ecstasy. His high school records reflected a 1.23 grade point average and multiple disciplinary referrals for "defying school authority, school disruption and possession of a [controlled] substance." The probation department assessed Elijah's risk for reoffending as high.

The probation officer also detailed several conversations with Elijah and his adoptive mother, Sheila. Originally, on December 30, 2014, Elijah told the probation officer he left Sheila's home "because she did not want him to stay and told him to stay with his family in Fresno." On the same day, the probation officer interviewed Sheila by phone, and she described Elijah as "defiant and disrespectful," "refus[ing] to obey any rules and . . . out of control." Sheila said Elijah could live with her, "but only if he is willing to fully cooperate and obey her house rules." Sheila forbade contact with Elijah's relatives in Fresno because of their gang involvement and expressed concern that if Elijah returned he might bring a firearm into her home.

The probation report indicated several disciplinary issues at juvenile hall. In one instance, Elijah "started banging on his door and yelling profanities and gang threats." In another instance, Elijah was restricted to his room and reportedly told a staff member, "I'm gonna put a hit out on yo bitch ass . . . five in the chest, one in the head. Don't let me catch your bitch ass on the outs. It's yo life, that's on the set. . . . I hope you bitches die tonight. Fuck you and your family." Staff saw Elijah writing on his door and when they approached, he made jabbing motions towards them with a pencil, which he refused to surrender.

On January 2, 2015, Elijah told the probation officer that he wanted a chance to return home with Sheila on home supervision "and would make a serious effort to obey the house rules and be respectful." Elijah was told home supervision was not an option

4

and the probation department was recommending Bar-O-Boys Ranch. This news upset Elijah, who wanted to stay in Contra Costa County and be close to Sheila.

The probation officer stated Elijah had been screened for placement in a group home and, though technically eligible, his needs did not warrant such a placement. Orin Allen Youth Rehabilitation Facility (OAYRF), located in Contra Costa County, was also "found unsuitable given [Elijah's] psychotropic medication needs." Based on the gravity of Elijah's sustained offense, gang affiliation, and refusal to obey Sheila's rules, the probation officer recommended commitment to the Bar-O-Boys Ranch. At Bar-O-Boys Ranch, Elijah would receive "aggression replacement training, moral recognition therapy, and substance abuse counseling," and he could participate in vocational programs.

At the first day of the disposition hearing, Sheila testified that Elijah is a "good kid" with anger issues. She said Elijah got "pretty good grades" but "struggl[ed] in math." Elijah had been diagnosed with ADHD and dyslexia and prescribed several different medications, including Ritalin and Adderall. None of the medications helped and made Elijah feel "like a zombie." After Elijah was taken off the medication, his grades improved.

Sheila visited Elijah in juvenile hall three times. She noticed a change in his demeanor towards her. At first, Elijah "thought I just gave up on him" and then realized "I was going to stick by him." He needed "guidance and love," and when she talked to him, "it seemed like it helped." Elijah called Sheila every evening. She tried "to give him good advice and . . . he seem[ed] to accept that." If Elijah was placed locally, Sheila would visit him. However, she would not be able to visit at the Bar-O-Boys Ranch because she worked full-time and cared for another child.

On cross-examination, Sheila acknowledged she may have told the probation officer that Elijah was defiant and disrespectful, but now said he was not defiant in her home. Sheila denied telling the probation officer that when Elijah lived with her, he refused to obey any rules and was out of control. Sheila attempted to minimize Elijah's offense by claiming he "just got hooked up with the wrong people at the time it happened." She was no longer concerned about Elijah bringing a firearm into her home.

5

The probation officer also testified regarding his continuing recommendation for commitment at Bar-O-Boys Ranch. Elijah was unsuitable for OAYRF because it was not qualified to administer psychotropic medications and could not accept minors who might need such medication. Originally, the probation officer believed the only reason Elijah was no longer on medication was because he was a runaway, but he later learned Elijah's doctor decided medication was unnecessary. Nevertheless, the probation officer did not request OAYRF to reconsider Elijah's eligibility because Bar-O-Boys Ranch remained a better option "[g]iven [Elijah's] charge, gang ties, aggression," and the probation officer's concern for public safety. Bar-O-Boys Ranch was in a remote location, whereas OAYRF was "open" and in a residential area. However, the probation officer also acknowledged "visitation and contact with family" would be beneficial to Elijah.

The juvenile court found Elijah unsuitable for home supervision. The court explained: "To return [Elijah] home with [Sheila] is something I'm absolutely not prepared to do for lots of reasons. For one, he ran away from her home. . . . [¶] She says also he refuses to follow her directives and told her that he wants to reside[] in Fresno with his paternal relatives. This is in mid-December, not that far away. [¶] Then we have [Elijah's] letter to [Sheila], which is hardly warm and comforting in terms of his relationship with her. . . . [¶] [Sheila's] statements to the probation officer, for the purposes of this report, are totally in conflict with the things that she told the probation officer in Fresno and also what she told the . . . people up in our county where she said that he is becoming too much for her to handle. She expressed possibly giving up her parental rights and contacting Social Services. [¶] Now, I'm of the opinion that her feelings may have been softened at some point, . . . but for those reasons, I'm absolutely not going to be able to grant home supervision. [¶] He has not got a good relationship . . . with [Sheila]. It would not be a safe place for him to stay, and he would still be a threat to her and the community."

However, before concluding the disposition hearing and after Elijah waived time, the court ordered an updated assessment of Elijah's medication needs. The court explained OAYRF did not have "24/7 medical supervision" and no one there was

6

qualified to administer psychotropic medication. However, it also noted, "[Juvenile] Hall has 24/7 staff, and if he had psychotropic medications that were needed, that would be an alternative. So it's not like he's prohibited from staying local because we don't have the services available to him to handle that." The matter was continued.

When the matter was next called, the juvenile court acknowledged that the juvenile hall psychiatrist, who recently evaluated Elijah, had not prescribed any psychotropic medication and believed Elijah "was doing fine" without it. Based on that assessment, the juvenile court agreed with defense counsel that medication was no longer a basis to eliminate OAYRF. However, the court found Elijah was "clearly not ready to be returned" to Sheila on home supervision, and that "weekends at the Hall or a short program at [OAYRF]" were not enough.

The court cited the seriousness of Elijah's offense, stating "he's walking down a public street with this ready to use dangerous weapon, putting the public and himself in a potentially dangerous situation should there be a confrontation." The court also relied on Elijah's gang association, his poor academic record and disciplinary incidents at school, his admitted marijuana use, the probation department's risk assessment, and Elijah's "extremely confrontational episode" with juvenile hall staff. The court agreed with the probation officer that the structured program Elijah needed to addresses his issues with anger, school performance, conforming behavior, and "negative peer associations," would "best be offered" out of the community. The fact that OAYRF is "not a secure program, and it's in our community" made it less suitable. The court acknowledged Bar-O-Boy Ranch's physical distance created a "down side to [Sheila] should she want to visit up there, although they do promote and encourage contact by both telephone and by letter."

2.      *Analysis*

Elijah's position is that the juvenile court necessarily abused its discretion because the disposition is inconsistent with the statutory goals to preserve and strengthen family ties and because he is a first-time ward. We review a commitment decision for abuse of discretion. (*Nicole H., supra,* 244 Cal.App.4th at p. 1154; *In re Asean D.* (1993)

7

14 Cal.App.4th 467, 473.) " 'We will not disturb the juvenile court's findings when there is substantial evidence to support them. [Citation.] " 'In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law.' " ' " (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.) "The purpose of juvenile delinquency laws is twofold: (1) to serve the 'best interests' of the delinquent ward by providing care, treatment, and guidance to rehabilitate the ward and 'enable him or her to be a law-abiding and productive member of his or her family and the community,' and (2) to 'provide for the protection and safety of the public . . . .' (§ 202, subds. (a), (b) & (d); [citations].)"[5] (*In re Charles G.* (2004) 115 Cal.App.4th 608, 614–615.) Accordingly,

_____

[5] Section 202, subdivision (a), provides: "The purpose of this chapter is to *provide for the protection and safety of the public* and each minor under the jurisdiction of the juvenile court *and to preserve and strengthen the minor's family ties whenever possible*, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public. If removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective. If the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents. This chapter shall be liberally construed to carry out these purposes." (Italics added.)

Section 202, subdivision (b), provides: "Minors under the jurisdiction of the juvenile court who are in need of protective services shall receive care, treatment, and guidance consistent with their best interest and the best interest of the public. Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. *This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter*. If a minor has been removed from the custody of his or her parents, *family preservation and family reunification are appropriate goals for the juvenile court to consider when determining the disposition* of a minor under the jurisdiction of the juvenile court as a consequence of delinquent conduct *when those goals are consistent with his or her best interests and the best interests of the public*. When the minor is no longer a ward of the juvenile court, the guidance he or she received should enable him or her to be a law-abiding and productive member of his or her family and the community." (Italics added.)

"when we assess the record in light of the purposes of the Juvenile Court Law [citation], we evaluate the exercise of discretion with punishment and public safety and protection in mind." (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 58.)

"In determining the judgment and order to be made in any case in which the minor is found to be a person described in Section 602, the court shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.)

Recently, in *Nicole H., supra,* 244 Cal.App.4th 1150, we concluded a juvenile court abused its discretion in placing a ward many hours away from her home. (*Id.* at pp. 1155, 1159–1160.) We observed: " 'Although public safety and the rehabilitation of the minor (presumed to serve the best interests of the delinquent minor) are the preeminent goals of the juvenile law relating to delinquent minors, it is also true that family reunification and the reintegration of the minor into his family are statutorily recognized to be important and complementary goals.' [Citation.] Thus, while section 727, subdivision (a), authorizes a juvenile court that adjudges a minor a ward of the court under section 602 to 'make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor . . . ,' section 727.1 specifies various criteria the court must consider in making an out-of-home placement, including proximity of the placement to the minor's parent's home." (*Nicole H.,* at pp. 1155–1156.) Because the record was devoid of any evidence or reasoning suggesting the group home placement far from the minor's home was in her best interests despite the lack of proximity and "[t]his was contrary to former and current sections 727.1 and 706.6," the disposition order was reversed and remanded for reconsideration. (*Nicole H.,* at pp. 1157–1158, 1159–1160.)

Here, in contrast to *Nicole H.*, the record shows the commitment order was reasonable. The juvenile court clearly considered Bar-O-Boys Ranch to be in Elijah's best interest despite its distance from Sheila's home. The court did not "unreasonably [give] short shrift to the evidence that Sheila and [Elijah] were actively repairing their

9

relationship," but instead focused on the remoteness and security of Bar-O-Boys Ranch, the nature of Elijah's offense, his gang ties, his threats to juvenile hall staff, and his history of conflict with Sheila. It may be true that the gang Elijah associates with is in Fresno, but we cannot agree that the juvenile court abused its discretion by committing him to the more secure Bar-O-Boys Ranch rather than OAYRF, especially given Elijah's history as a runaway. Bar-O-Boys Ranch offers aggression replacement training, moral recognition therapy, substance abuse counseling, and vocational programs. The record supports the inference that public safety, as well as Elijah's rehabilitation, would be at risk if a less restrictive disposition was made. A commitment order "may be validly based on punishment and public safety grounds so long as it will also provide rehabilitative benefit to the minor." (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1394.) "The gravity of the offense is by statute a proper consideration at disposition." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1330.)

"[J]uvenile placements need not follow any particular order under section 602 . . . , including from the least to the most restrictive. [Citations.] Nor does the court necessarily abuse its discretion by ordering the most restrictive placement before other options have been tried." (*In re Eddie M*. (2003) 31 Cal.4th 480, 507.) Because there is evidence the juvenile court considered and reasonably rejected less restrictive dispositions due to legitimate security and accountability concerns, there is no basis to second guess its order. (*In re Teofilio A*. (1989) 210 Cal.App.3d 571, 577.) The juvenile court did not abuse its discretion.

B.      *Special Education Needs*

Next, Elijah contends the juvenile court abused its discretion by failing to address his special education needs as required by *Angela M., supra,* 111 Cal.App.4th 1392. Remand in that case was necessitated by the juvenile court's failure to make findings on the minor's educational needs, as required by the California Rules of Court, California Education Code, and federal Individuals with Disabilities Education Act. (*Angela M.,* at

pp. 1397–1399.)[6] The juvenile court had been on notice that the minor was suffering from bipolar disorder and ADHD. (*Id.* at pp. 1395, 1398–1399.) In fact, a court-appointed psychologist had recommended she be evaluated for an individualized education plan. (*Id.* at pp. 1395, 1399.) Nonetheless, the juvenile court did not mention the minor's education needs when committing her to the California Youth Authority (now the Division of Juvenile Justice of California's Department of Corrections and Rehabilitation). (*Id.* at pp. 1396, 1399.) The matter was remanded to permit the juvenile court to determine whether an evaluation of the minor's special educational needs should be conducted. (*Id.* at p. 1399.)

The People maintain Elijah's claim was forfeited when he did not raise it before the juvenile court. "A defendant cannot for the first time on appeal challenge the manner in which the sentencing judge exercises discretion in making sentencing choices or articulates his or her supporting reasons." (*People v. de Soto* (1997) 54 Cal.App.4th 1, 4; accord, *People v. Scott* (1994) 9 Cal.4th 331, 356.) We agree that Elijah's counsel should have raised an objection before the juvenile court if he believed Elijah had special needs that would benefit from further evaluation. It is also reasonable to infer that Elijah's counsel did not raise any such objection because it may have tended to undercut his argument that OAYRF or home supervision were the more suitable placements. Instead, Elijah's counsel focused on the opinion that Elijah "was doing fine" without psychotropic medication.

---

[6] Education Code section 56000, subdivision (a), declares that "all individuals with exceptional needs have a right to participate in free appropriate public education . . . ." " 'Individuals with exceptional needs' " include any child who is "[i]dentified by an individualized education program team as a child with a disability," as defined by the Individuals with Disabilities Education Act (20 U.S.C. § 1400 et seq.), whose impairment "requires instruction and services which cannot be provided with modification of the regular school program" and who meets certain other prescribed eligibility criteria. (Ed. Code, § 56026, subds. (a)–(d).) Former rule 1493(e)(5) of the California Rules of Court implemented this legislative mandate by directing that the juvenile court, when declaring a child a ward of the court, " 'must consider the educational needs of the child.' " (*Angela M., supra,* 111 Cal.App.4th at p. 1398; see Cal. Rules of Court, rule 5.651(b)(2).)

However, reliance on the forfeiture doctrine may be inappropriate in light of the juvenile court's mandatory duty to consider whether Elijah had special educational needs before making its commitment order. (See *Angela M., supra,* 111 Cal.App.4th at p. 1398; Cal. Rules of Court, rule 5.651(b)(2) [juvenile court must consider child's educational needs and determine a plan to meet such needs at disposition hearing].) We consider the issue on its merits but conclude the disposition order need not be reversed.

Here, just as in *Angela M.,* the juvenile court was aware Elijah had been diagnosed with ADHD and dyslexia and in the past had been prescribed several different medications, including Ritalin and Adderall. Yet, Elijah's special education needs were not specifically addressed in the disposition order. This case is different from *Angela M.*, however, in that Elijah already has an individualized education plan, which was last prepared in 2014. Furthermore, the juvenile court quite clearly took Elijah's special educational needs into consideration at the disposition hearing. Specifically, it considered that OAYRF would be ill-suited to handle any future need for psychotropic medication. The disposition hearing was continued for further evaluation of Elijah's medication needs, after which it was determined that Elijah "was doing fine." Medication needs may be "only one aspect" of Elijah's special education needs, but there is no showing that Elijah's special educational needs cannot be addressed at Bar-O-Boys Ranch. Nonetheless, similar to the *Angela M.* court, we will remand the matter to the juvenile court to determine whether any revision to Elijah's individualized education plan, or any other further evaluation of Elijah's special educational needs, should be conducted.

C.  *Probation Conditions*

Next, Elijah challenges two probation conditions. At the conclusion of the disposition hearing, the juvenile court imposed a number of probation conditions, including the following: "You're to submit your person, property, any vehicle under your control, any cell phone, or other *electronic device* in your possession—and I'm adding *with access codes thereto*—and your residence to search and seizure by a peace

12

officer at any time of the day or night with or without a warrant."[7]  (Italics added.)  The juvenile court also ordered Elijah "not to use or possess any dangerous or deadly weapons."  Despite the probation officer's recommendation of both conditions in the probation report, Elijah's counsel did not object to either.  On appeal, Elijah argues that the electronics search condition is unreasonable under *Lent, supra*, 15 Cal.3d 481, and is unconstitutionally overbroad.  Elijah also maintains the weapons condition is unconstitutionally vague.

When a minor, like Elijah, is "placed under the supervision of the probation officer or committed to the care, custody, and control of the probation officer. . . the court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."  (§ 730, subd. (b); see § 202, subd. (b).)  Thus, section 730 authorizes the juvenile court to order a ranch or camp commitment *and* "make any and all reasonable orders for the conduct of the ward" during the ward's commitment and following his release to the community.  (*In re Robert H., supra,* 96 Cal.App.4th at p. 1331 [deeming such conditions "conditions of supervision"].)  "A juvenile court enjoys broad discretion to fashion conditions of probation for the purpose of rehabilitation and may even impose a condition of probation that would be unconstitutional or otherwise improper so long as it is tailored to specifically meet the needs of the juvenile."  (*In re Josh W.* (1997) 55 Cal.App.4th 1, 5.)  " 'In fashioning the conditions of probation, the

---

[7] As Elijah points out, the corresponding condition in the minute order is different.  It provides:  "Submit person, property, any vehicle under [Elijah's control], and residence to search and seizure by any peace officer any time of the day or night with or without a warrant."  When the reporter's and clerk's transcripts differ as to how probation conditions are stated, "the modern rule is not automatic deference to the reporter's transcript, but rather adoption of the transcript due more credence under all the surrounding circumstances."  (*People v. Rodriguez* (2013) 222 Cal.App.4th 578, 586; but see *People v. Gabriel* (2010) 189 Cal.App.4th 1070, 1073 [oral pronouncement controls].)  The parties agree that the reporter's transcript governs here, thus we review the conditions as stated therein.

juvenile court should consider the minor's entire social history in addition to the circumstances of the crime.' " (*In re R.V.* (2009) 171 Cal.App.4th 239, 246.)

"[J]uvenile conditions may be broader than those pertaining to adult offenders. This is because juveniles are deemed to be more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed." (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 941.) "Further, when the state asserts jurisdiction over a minor, it stands in the shoes of the parents. A parent may curtail a child's exercise of constitutional rights because a parent's own constitutionally protected ' " 'liberty' " ' includes the right to ' " 'bring up children' " ' and to ' " 'direct the upbringing and education of children.' " ' " (*In re Antonio C.* (2000) 83 Cal.App.4th 1029, 1033–1034.) " 'In light of this difference, a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*).)

We agree with the People that Elijah's *Lent* challenge has been forfeited by his failure to raise it before the juvenile court. A challenge to a probation condition as unreasonable under *Lent* cannot be raised on appeal unless an objection was raised in the juvenile court. (*Sheena K., supra,* 40 Cal.4th at p. 885; *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1347.) However, we consider the merits of Elijah's *Lent* argument because he argues that, to the extent it was forfeited by failure of his counsel to object, he received ineffective assistance of counsel. Because we conclude Elijah's *Lent* challenge fails on the merits, his claim that counsel was ineffective for failure to raise the objection also necessarily fails. An appellant seeking reversal for ineffective assistance of counsel must prove both deficient performance and prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Ledesma* (1987) 43 Cal.3d 171, 217–218.) Elijah establishes neither.

Elijah's objections on constitutional overbreadth and vagueness grounds may be raised for the first time on appeal because they present pure questions of law. (*Sheena K., supra*, 40 Cal.4th at pp. 888–889 [defendant's challenge to probation condition as

unconstitutionally overbroad and vague not forfeited by failing to object in juvenile court].) We review reasonableness challenges for abuse of discretion and constitutional challenges de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143; *People v. Mendez* (2013) 221 Cal.App.4th 1167, 1172.)

        1.     *Reasonableness of the Electronic Search Condition*

" '[A] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' (*Lent, supra,* 15 Cal.3d at p. 486.) [The *Lent*] test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*People v. Olguin* (2008) 45 Cal.4th 375, 379–380 (*Olguin*).) "*Lent* applies to juvenile court probation orders." (*In re Josh W., supra,* 55 Cal.App.4th at p. 6.)

We focus on the final justification under *Lent*—future criminality. (*Lent, supra,* 15 Cal.3d at p. 486.) The electronics search condition is not reasonable under the first two *Lent* prongs. We agree with Elijah that the condition has no relationship to his offense because there is no evidence Elijah used electronic devices or social media in any manner. And "the typical use of electronic devices . . . is not itself criminal."[8] (*In re Erica R.* (2015) 240 Cal.App.4th 907, 913 (*Erica R.*).) The People contend the condition is reasonable "because the use of cell phones and other electronics could relate to criminal conduct and future criminality;" specifically, "[u]nannounced, suspicionless searches of [Elijah's] electronic devices will help to ensure he is obeying the fundamental condition of all grants of probation, that is, the usual requirement that the probationer

---

      [8] We are not persuaded that, because "a cell phone or computer can be the instrumentality of a crime," the condition is necessarily valid.

15

obey all laws." In contrast, Elijah maintains the condition is not reasonably related to future criminality because there is no particularized risk that Elijah may use an electronic device to commit a future crime.

The law in this area is unsettled. The divisions of this appellate district have reached different conclusions on similar conditions. (See *Erica R., supra,* 240 Cal.App.4th 907 [Division Two striking condition as unreasonable]; *In re Mark C.* (2016) 244 Cal.App.4th 520 (*Mark C.*) [same]; *In re Malik J.* (2015) 240 Cal.App.4th 896 [Division Three holding condition reasonable but overbroad]; *In re J.B.* (2015) 242 Cal.App.4th 749 (*J.B.*) [Division Three striking condition as unreasonable]; *In re A.S.* (2016) 245 Cal.App.4th 758 (*A.S.*) [Division Four holding condition reasonable and not overbroad].)[9]

In *Erica R., supra,* 240 Cal.App.4th 907, a minor admitted misdemeanor possession of Ecstasy and was placed on probation with a condition requiring her to turn over her passwords and submit to a search of electronic devices. (*Id.* at pp. 909–910.) Our colleagues in Division Two concluded the condition was unreasonable under *Lent* "because there was no evidence connecting the juvenile's electronic device or social media usage to her offense or to a risk of future criminal conduct." (*Erica R.,* at pp. 909–910.)

The *Erica R.* court, without discussion of *Olguin, supra,* 45 Cal.4th 375, determined the electronic search condition was not reasonably related to future criminality. The court observed: "There is nothing in this record regarding either the current offense or [the minor's] social history that connects her use of electronic devices or social media to illegal drugs. In fact, the record is wholly silent about [her] usage of electronic devices or social media. Accordingly, '[b]ecause there is nothing in [the

---

[9] The Supreme Court is currently considering the validity of similar electronic search conditions in *In re Ricardo P.* (2015) 241 Cal.App.4th 676, review granted February 17, 2016, S230923, *In re Patrick F.* (2015) 242 Cal.App.4th 104, review granted February 17, 2016, S231428, and *In re Alejandro R.* (2015) 243 Cal.App.4th 556, review granted March 9, 2016, S232240.

16

minor's] past or current offenses or [her] personal history that demonstrates a predisposition' to utilize electronic devices or social media in connection with criminal activity, 'there is no reason to believe the current restriction will serve the rehabilitative function of precluding [the minor] from any future criminal acts.' " (*Erica R., supra,* 240 Cal.App.4th at p. 913.)

In *Mark. C., supra,* 244 Cal.App.4th 520, our colleagues in Division Two again held such a condition was invalid under *Lent.* The minor's offense was possessing a prohibited knife on school. (*Id.* at p. 531.) With respect to future criminality, the court rejected the People's argument that such a search condition would deter further offenses and enable monitoring of compliance with other probation conditions. (*Id.* at p. 533.) The court explained: "We do not read *Olguin* to hold that *every* condition that might enable a probation officer to supervise his or her minor charges more effectively is necessarily 'reasonably related to future criminality.' (*Olguin, supra*, 45 Cal.4th at p. 381.) Such a reading would effectively eliminate the reasonableness requirement that the court in *Olguin* discusses at some length. (*Id*. at p. 382.) [¶] . . . [¶] . . . There is nothing in the record about [the minor's] offense or his social history that connects [the minor's] use of electronics to illegal drugs. With respect to electronics and drugs, the record shows only that over the course of four months [the minor] was disciplined at school five times for using a cell phone in class and that [the minor] admitted using marijuana twice a month. Because nothing in [the minor's] offense or personal history shows a connection between his use of electronic devices or social media and any criminal activity, there is no reason to believe that the electronics search condition will serve the rehabilitative function of preventing . . . future criminal acts." (*Mark C.,* at pp. 533–535.)

Our colleagues in Division Three reached a similar conclusion. (*J.B., supra,* 242 Cal.App.4th at p. 756.) In *J.B.*, the minor admitted an allegation of petty theft, was adjudged a ward of the court, and placed on probation. The juvenile court imposed an electronics search condition, relying on the minor's statement he had been using marijuana for at least two and a half years and the court's experience that minors using

drugs tend to brag about their usage on the Internet.  (*Id.* at pp. 752–753.)  The *J.B.* court held, on appeal, the minor's prior use of marijuana was an inadequate justification for warrantless electronic searches under *Lent* because there was "no showing of any connection between the minor's use of electronic devices and his past or potential future criminal activity." (*Id.* at pp. 756, 758.)  The *J.B.* court distinguished *Olguin, supra,* 45 Cal.4th 375, on the ground it involved an adult probationer and none of the privacy concerns articulated in *Riley v. California* (2014) 573 U.S. ___ [134 S.Ct. 2473] (*Riley*). (*J.B.,* at p. 757.)  The court held that reasonableness is not judged solely by whether the condition itself would be reasonably effective in preventing future criminality, but whether it could be seen as a reasonable means for deterring future crime by this *particular* minor based on his history.  (*Id.* at p. 757.)

We respectfully disagree with the *Erica R., Mark C.,* and *J.B.* courts' conclusions that upholding such a condition under *Lent* requires a particularized tie between the minor's past conduct and the use of electronics.  In our view, such a conclusion is inconsistent with our Supreme Court's holding in *Olguin*.

In *Olguin, supra*, 45 Cal.4th 375, the defendant, who had been convicted of driving under the influence of alcohol, challenged a probation condition requiring him "to notify his probation officer of the presence of any pets at [the] defendant's place of residence." (*Id.* at p. 378.)  Acknowledging that the challenged condition "ha[d] no relationship" to the defendant's crime and did not involve criminal conduct, our Supreme Court nonetheless upheld the condition under *Lent* because it protected the safety of the probation officer charged with "supervising [the] probationer's compliance with specific conditions of probation."  The condition furthered the probation officer's "ability to make unscheduled visits and to conduct unannounced searches of the probationer's residence" to "deter[] future criminality." (*Olguin*, at pp. 380–381.)  The *Olguin* court held a probation condition "that enables a probation officer to supervise his or her charges effectively is . . . 'reasonably related to future criminality' "—*even if the condition has no relationship to the crime of which a defendant was convicted.  (Ibid.)*

18

Unless our state Supreme Court departs from its holding in *Olguin*, we are bound to accept the principle that conditions reasonably related to enhancing the effective supervision of a probationer are valid under *Lent*. Nothing in *Olguin*, nor in any other case of which we are aware, requires a connection between a probationer's past conduct and the locations that may be searched to uphold a search condition under *Lent*. For example, valid conditions permitting warrantless searches of a minor's person, property, and residence are common. (See *In re Tyrell J.* (1994) 8 Cal.4th 68, 86–87, disapproved on other grounds by *In re Jaime P.* (2006) 40 Cal.4th 128, 132–134; *In re Binh L.* (1992) 5 Cal.App.4th 194, 203–204.) Such conditions routinely provide for searches of probationers' vehicles regardless of whether anything in the record suggests the court has a particularized reason to suspect illegal activity in a vehicle.

In any event, we agree with the People that *Erica R., Mark. C.,* and *J.B.* are distinguishable on their facts. Elijah committed a far more serious offense, admitted gang associations, made death threats against staff at juvenile hall, admitted using drugs, and ran away from his adoptive mother. In fact, this case is more analogous to *A.S., supra,* 245 Cal.App.4th at pp. 771–772, in which Division Four of this court upheld an electronic search condition, relying on *Olguin* and *People v. Ebertowski* (2014) 228 Cal.App.4th 1170.[10] In *A.S.,* the minor admitted an assault by means likely to

---

[10] In *People v. Ebertowski*, the Sixth District Court of Appeal upheld an electronics search condition as related to the defendant's crimes. The defendant was not only convicted of gang-related offenses, including making violent threats against police, but there was also evidence that the defendant had specifically used social media sites to promote his gang. (*Ebertowski, supra,* 228 Cal.App.4th at pp. 1172–1173, 1175–1177.) The court observed: "Without passwords for defendant's devices and social media accounts, the probation officer would not be able to search them . . . in order to assess defendant's compliance with the unchallenged [gang] association and gang insignia conditions. . . . [¶] . . . [¶] . . . The only way that defendant could be allowed to remain in the community on probation without posing an extreme risk to public safety was to closely monitor his gang associations and activities. The password conditions permitted the probation officer to do so. Consequently, the password conditions were reasonable under the circumstances, and the trial court did not abuse its discretion in imposing them." (*Id.* at pp. 1175–1177.)

produce great bodily injury (Pen. Code, § 245, subd. (a)) on her own mother. (*A.S.*, at pp. 762–763.) The probation report also indicated the minor smoked marijuana, had mental health concerns, was involved in a romantic relationship with an adult, and had experienced conflict with her mother for many years, which led her to be a runaway. (*Id.* at p. 763.)

The *A.S.* court noted our Supreme Court "has placed its imprimatur on the concept that conditions of probation that facilitate supervision of the probationer can justify their imposition." (*A.S., supra,* 245 Cal.App.4th at p. 771.) In upholding the electronic search condition under *Lent*'s third prong, the court reasoned: "We reach a parallel conclusion [to *Olguin*] under these facts; the electronic search condition is reasonably related to deterring future criminality because it facilitates the type and level of supervision of [the minor] which is absolutely necessary for her to succeed on probation. [¶] . . . [¶] [The minor] is very troubled, torn by serious mental illnesses, a dysfunctional family life, a significant gap in her educational training, and poor social choices that, if not controlled, would doom her to reoffend and to violate probation. The juvenile court did not simply impose the electronic search clause reflexively, but with acute awareness of the need for close supervision of [the minor's] daily activities for there to be any hope of her success on probation. . . . [¶] As did the juvenile court, we conclude that the electronic search condition in this case was not only warranted, but vital to ensure [the minor's] compliance with the terms of her probation." (*Id.* at pp. 771–772, fn. omitted.)

We follow *A.S.* and conclude that the third test required to invalidate a probation condition—that the condition forbids conduct unrelated to future criminality—is not satisfied. Although there is no evidence Elijah previously used electronics and social media to communicate about anything illegal, including the underlying offense, drug use, or gang activity, we nonetheless conclude the electronics search condition is reasonably related to future criminality. We agree with the People that the electronic search condition will enable probation to effectively monitor Elijah's compliance with his other

probation conditions, such as alcohol, drug, and firearm prohibitions.[11]  (See *People v. Adams* (1990) 224 Cal.App.3d 705, 712.)

Here, similar to the minor in *A.S.*, *supra,* 245 Cal.App.4th 758, Elijah is a very troubled teenager needing active supervision and monitoring to prevent future criminality.  Given Elijah's social history and the circumstances that led to his wardship, we cannot say it is unreasonable for the juvenile court to believe that monitoring Elijah's use of electronic communication and social media will have some tendency to reduce his likelihood of future criminal behavior.  We conclude that the challenged condition is "reasonable" within the meaning of both section 730 and *Lent, supra*, 15 Cal.3d 481.  Elijah's counsel was not incompetent for failing to make an objection that would have been properly overruled, and no prejudice was suffered by Elijah as a result of the lack of an objection.

### 2.     *Constitutionality of Electronic Search Condition*

Elijah also contends the electronic search condition is unconstitutionally overbroad because it is not narrowly tailored to limit its impact on his constitutional right to privacy.  Instead, the condition allows "unfettered access to [Elijah]'s most intimate information and legal activities."  We will remand for modification.

"A probation condition . . . may be challenged as unconstitutionally vague or overbroad. [Citation.]  Although the two objections are often mentioned in the same breath, they are conceptually quite distinct.  A restriction is unconstitutionally vague if it is not ' "sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' [Citation.]  A restriction failing this test does not give adequate notice—'fair warning'—of the conduct proscribed.  [Citations]  A restriction is unconstitutionally overbroad, on the other hand, if it (1) 'impinge[s] on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.'

---

[11] The electronic search condition is unnecessary to monitor compliance with gang conditions because no gang conditions were imposed by the juvenile court.

[Citations.] The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

In arguing that the electronics search condition is overbroad, Elijah relies on the United States Supreme Court's discussion of related privacy concerns in *Riley, supra,* 134 S.Ct. 2473. The *Riley* court held that law enforcement officers generally must secure a warrant before searching the digital content of a cell phone incident to an arrest. (*Id.* at p. 2493.) The court distinguished a search of a modern cell phone's contents from the search of other property found during a typical arrest search of the person. A cell phone "not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." (*Id.* at p. 2491.)

We agree that "[m]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life' [citation]." (*Riley, supra,* 134 S.Ct. at pp. 2494–2495.) Yet, this characterization is not particularly helpful here. Unlike the arrestee in *Riley*, who had not yet been convicted of any crime, Elijah *has* been found to have committed a crime and is a ward of the juvenile court. Accordingly, his privacy interests are far more limited than the *Riley* arrestee. (*In re Antonio R., supra,* 78 Cal.App.4th at p. 941 [juvenile's constitutional rights more circumscribed than adult's]; *In re Jaime P., supra,* 40 Cal.4th at p. 134 [privacy rights of a probationer are "diminished"].)

However, contrary to the People's argument,[12] the electronics search condition implicates Elijah's constitutional privacy rights. (See *People v. Appleton* (2016) 245 Cal.App.4th 717, 719, 727 [Sixth District Court of Appeal holding electronic search

---

[12] The People contend no overbreadth analysis is required here because "[Elijah] has no constitutional right against searches of his property conducted by law enforcement in reliance on a juvenile probation search condition."

condition, applied to *adult* probationer, was overbroad].)  In *Appleton,* the defendant pleaded no contest to false imprisonment and admitted meeting his minor victim through a social media application.  (*Id.* at pp. 719–720.)  Thus, the electronic search condition was reasonable under *Lent*'s first prong because " 'either social media or some kind of computer software' was involved in the offense."  (*Id.* at p. 724.)

The *People v. Appleton* court went on to address overbreadth, first recognizing that "[i]t is well established that individuals retain a constitutionally protected expectation of privacy in the contents of their own computers."  (*Appleton, supra,* 245 Cal.App.4th at p. 724.)  The court further explained:  "Although [the majority of the cases from the First District] concerned juveniles, we generally agree with their reasoning related to computer search conditions.  Like the conditions at issue in those cases, the probation condition here would allow for searches of vast amounts of personal information unrelated to defendant's criminal conduct or his potential for future criminality.  Furthermore, the state's interest here—monitoring whether defendant uses social media to contact minors for unlawful purposes—could be served through narrower means."  (*Id.* at p. 727.)  The condition was stricken and the matter remanded "because the trial court may be able to impose a valid condition more narrowly tailored to the state's interests."  (*Ibid.*)

Here, the probation condition is similar in that it has not been narrowly tailored to promote Elijah's rehabilitation and the public's protection.  "Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on [a] person.  The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone.  They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers."  (*Riley, supra,* 134 S.Ct. at p. 2489.)  The juvenile court did not tailor the condition by limiting the types of data (whether on an electronic device or accessible through an electronic device) that may be searched.  In our view, Elijah's privacy interests can be infringed, but only to the extent the information searched is reasonably likely to yield evidence of drug use, weapons possession, gang activity, or other criminal activity and noncompliance with probation

conditions. Accordingly, we will strike the condition and remand to the juvenile court so it may impose a narrowed condition that does not unduly infringe on Elijah's privacy rights.

>3. *Dangerous or Deadly Weapons Prohibition*

Finally, Elijah maintains that the weapons condition is unconstitutionally vague on its face. The juvenile court orally ordered Elijah, "not to use or possess any dangerous or deadly weapons." Elijah complains that the condition is vague because it does not define "dangerous or deadly weapon" and he could be charged with violating the probation condition even if he "lack[s] actual knowledge of a weapon's presence in, for example, a car trunk or bicycle pannier . . . ." Elijah asks us to modify the condition to include a knowledge requirement.[13] The People, on the other hand, maintain the condition adequately provides notice and includes an implicit knowledge requirement.

"It is an essential component of due process that individuals be given fair notice of those acts which may lead to a loss of liberty." (*In re Robert M.* (1985) 163 Cal.App.3d 812, 816.) A probation condition is "unconstitutionally vague if it is not ' "sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' ([*Sheena K., supra*, 40 Cal.4th] at p. 890 . . . .) A restriction failing this test does not give adequate notice—'fair warning'—of the conduct proscribed." (*In re E.O., supra,* 188 Cal.App.4th at p. 1153.) "The vagueness doctrine bars enforcement of ' "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." [Citation.]' [Citation.] . . . In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific *context*,' and that, although not admitting of 'mathematical certainty,' the language used

---

[13] Closely related questions are presently pending before our Supreme Court in *People v. Hall* (2015) 236 Cal.App.4th 1124, review granted September 9, 2015, S227193 and *People v. Gaines* (2015) 242 Cal.App.4th 1035 review granted February 17, 2016, S231723.

24

must have ' "*reasonable* specificity." ' " (*Sheena K.,* at p. 890.) "Thus, a statute 'will not be held void for vagueness "if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources." ' " (*People v. Lopez* (1998) 66 Cal.App.4th 615, 630.)

As Elijah acknowledges, some courts reviewing a weapons condition have implied a knowledge requirement and concluded that modification is unnecessary. (*People v. Rodriguez, supra,* 222 Cal.App.4th at pp. 590–591; *People v. Moore* (2012) 211 Cal.App.4th 1179, 1185; *People v. Patel* (2011) 196 Cal.App.4th 956, 960–961; *In re R.P.* (2009) 176 Cal.App.4th 562, 565 ["a probation condition prohibiting a minor from possessing any 'dangerous or deadly weapon' is sufficiently precise for the probationer to know what is required of him"].) The People ask us to follow this approach. However, other courts—including our colleagues in other divisions of this court—have declined to follow it. (*In re Kevin F.* (2015) 239 Cal.App.4th 351, 365 ["[t]o provide adequate protection against unwitting violations, the probationer must engage in the proscribed conduct *knowingly* (i.e., with actual intent and understanding that he possesses something constituting a weapon)"]; *In re Victor L.* (2010) 182 Cal.App.4th 902, 913 ["[due process] requires that the probationer be informed *in advance* whether his conduct comports with or violates a condition of probation"]; *People v. Freitas* (2009) 179 Cal.App.4th 747, 752 ["it is appropriate to modify the probation condition to specify that defendant not *knowingly* possess [firearms or ammunition]"].)

We agree that it is appropriate to add a knowledge element and will order the juvenile court to modify the challenged probation condition to read: "Do not knowingly use or possess any dangerous or deadly weapons."

### III.    DISPOSITION

The matter is remanded to the juvenile court for further proceedings consistent with this opinion. The juvenile court's revised disposition order shall contain a modified probation condition prohibiting possession of weapons that reads, "Do not knowingly use or possess any dangerous or deadly weapons." In all other respects, the judgment is affirmed.

25

_____
BRUINIERS, J.

WE CONCUR:


_____
JONES, P. J.


_____
SIMONS, J.